# WHEELING.

## RICHARDS v. FISHER.

### July 17, 1874.

F. purchases a house and lot of P. at the price of $160, payable in two instalments, and executes his two single bills to P., for the purchase money, and P. executes to F. his title bond, binding himself to make F. a general warranty deed for the house and lot when the purchase money is paid. F., before paying the purchase money and securing a deed, by contract sells the house and lot to H. for the consideration that H. agrees to pay the original · purchase money to P. H. takes permission of the house and lot and afterwards sells and conveys the same, with other lots, with general warranty, to Rockhold, and acknowledges the payment of the purchase money in the deed. Rockhold takes possession of the same, and afterwards conveys to R. with covenants of general warranty acknowledging the payment of the purchase money and R., afterwards conveys the same to R. junior, with general warranty, and acknowledges payment of the purchase money in the deed. H., only pays a part of the purchase money to P. and P. made a deed with covenants of general warranty to F., for the lot sold to him, acknowledging payment of the purchase money. The executor of P., afterwards sued and compelled F. to pay the unpaid purchase money, due the estate of P., upon said single bills. F., before paying the purchase money, requested H., Rockhold, and R., to pay said purchase money, so due the estate of P. and they each failed so to do.—HELD :

> That F. has a lien on the house and lot in the hands of R. junior, for his purchase money, which a court of equity will enforce ; and in such case a court of equity will not require F. to convey the house and lot without providing for the payment of his unpaid purchase money by a sale of the lot, if F.'s purchase money is not otherwise paid.

Appeal, operating as a *supersedeas*, by Commodore P. Richards, from a decree of the circuit court of Wirt

1874.
June Term.

Richards
v.
Fisher.

county, pronounced on the 9th day of May, 1873, in a suit then pending in said court, wherein said Richards was complainant, and John Fisher, E. C. Hopkins, C. B. Rockhold, and Laura M., his wife, and William D. Richards, were respondents.

The other facts sufficiently appear in the opinion of this Court.

The Hon. James M. Jackson, judge of said circuit court, presided at the hearing below.

*Gideon D. Camden* and *John A. Hutchinson, Jr.* for the appellant.

*David H. Leonard,* and *Okey Johnson,* for the appellees.

HAYMOND, PRESIDENT :

This is a bill filed by the plaintiff, to compel the making of a deed, by defendant, John Fisher, to plaintiff. It appears, that John Fisher, in March, 1854, purchased a house and lot, No. 23, situate in the town of Elizabeth, Wirt county, of Roland Petty, for $160, of which $100, with interest was to be paid the first day of November, 1859, and $60 with interest to be paid the 1st day of November, 1859, for which two several sums, Fisher, at the time of the purchase, made to Petty, his two several single bills, and Petty made to Fisher his title bond, binding himself to make to Fisher a deed for the lot. Not long after the purchase, Fisher sold the lot to E. C. Hopkins, he, (Hopkins,) agreeing to pay Petty, the whole amount of the purchase money, which Fisher agreed to pay. It seems that Fisher either assigned Petty's title bond to Hopkins, or made a written contract with him in relation thereto, though the evidence is not clear on the subject. However, it is clear that there was a contract of sale from Fisher to Hopkins, at the price aforesaid. After Hopkins made his purchase, he, by virtue thereof, took possession of the house and lot, and held and occupied it, claiming under his purchase'

until the 13th day of August, 1863. At which time he sold the lots, together with lot No. 24 and part of lot No. 22, adjoining each other, to Charles B. Rockhold, for the sum of $1000, and together with his wife, by deed of general warranty, conveyed the lots to Rockhold. This deed acknowledges the receipt of all the purchase money by Hopkins. Rockhold occupied and held possession of the lots, principally, from the date of his purchase until the 30th day of May, 1867, at which time he conveyed the lots to Wm. D. Richards, in consideration, as stated in the deed, of the sum of $450, the receipt of which is acknowledged in the deed. Afterwards, on the 17th day of August, 1869, Wm. D. Richards and wife conveyed the same lots by deed to their son, the plaintiff. The consideration named in this deed is $450, and the receipt thereof is acknowledged. Petty by deed of general warranty, dated 30th of June, 1860. conveyed said lot No. 23, to Fisher. This deed states the purchase money to be $160, and acknowledges the receipt thereof. There is no lien retained in any of the deeds for purchase money. On Fisher's single bills to Petty, these payments were made, viz: October 1, 1859, $14.08; April 3, 1860; $18.00; June 1, 1860, $35.00. It is clear that Hopkins made the two last named payments, but it does not satisfactorily appear that he made the first named payment.

After Petty conveyed the lot to Fisher, and before June, 1, 1860, he died. Rockhold, in fact, paid Hopkins all his purchase money except $101.64. principal, and that, he retained after he learned that Hopkins had not paid all the purchase money, in order to save himself. It appears that Hopkins held the single bill of Rockhold for said $101.64, and that he brought suit thereon in the circuit court of Wirt county, and at the April term thereof, 1866, he obtained judgment for the amount thereof, with interest and costs of suit against Rockhold; and upon the judgment an execution issued, and was

4

levied on property of Rockhold, and he gave a forthcoming bond for the delivery of the property, or the payment of the debt, (which, at that date, viz : the 9th day of June, 1866, amounted to $132.39,) with John Fisher as his security. Afterwards, at the December term, 1866, of said circuit court, judgment and execution was awarded on the forthcoming bond. In January, 1867, Rockhold obtained an injunction restraining the collection of the judgment on the forthcoming bond. Alfred Ott, was appointed and qualified as the executor of Petty, and as such executor of Petty, he sued and recovered judgment against Fisher for the balance of the original purchase money with interest after deducting the credits before stated. This judgment was obtained the 3rd of November, 1857—an execution was issued thereon, and Fisher paid the debt on the 31st of March, 1868. But Fisher, before he paid it, notified Hopkins, Rockhold and Wm. D. Richards, that the same was unpaid, and that if they, or either of them, would pay the amount Hopkins was still in arrear, he would make a deed for the lot to either or any of them who would pay it. They each failed to pay.

About the time John Fisher. paid the debt, Hopkins assigned his judgment against Rockhold and Fisher, to C. B. Fisher, without any. consideration passing from C. B. Fisher, to him, and according to the evidence of C. B. Fisher, who seems to be disinterested, Hopkins did not inform him for what purpose or object he made the assignment. But Hopkins says he intended the money when collected, to be paid by C. B. Fisher to John Fisher. John Fisher was not present when the assignment was made nor does it satisfactorily appear that he had any knowledge of the assignment having been made until after this suit was brought. C. B. Fisher says that the assignment was brought to him by Hopkins in his office already written, on the original transcript of the judgment, and that Hopkins when he handed him the transcript and assignment thereon of the judgment he reques-

ted him to record the judgment and assignment which he did, and that afterwards and after this suit was brought Hopkins came into the office, and said to him that he wanted the judgment entered satisfied, and that Rockhold was with him at the time. Rockhold in his deposition, states that he settled this judgment with Hopkins, but he does not state at what time. The plaintiff cross-examined Rockhold, but failed to enquire of him when or how he settled the judgment with Hopkins. It does not appear that C. B. Fisher or John Fisher, ever received any part of this judgment from Rockhold or Hopkins, though an attempt was made to prove that John Fisher did. It appears from the evidence of Rockhold that at the time he conveyed the lot to Wm. D. Richards, there was a lien on the property for $101.64, that he kept back from Hopkins, because Hopkins had not paid Fisher for one of the lots, and that Richards then and there said he would pay and settle that debt. Rockhold also states in his deposition that he had a conversation with the plaintiff, before the date of the deed conveying the property to him, at which time he "tried to get him to go to his father, (Wm. D. Richards,) and get him to settle the debt against the property." It also appears from the evidence of Rockhold, that he made the deed to Wm. D. Richards, for the said three lots and house thereon for the loan of $450, for eleven months with the understanding that by paying on or before the expiration of the time, $600, that he (Wm. D. Richards) was to re-convey the property back to him, and that the property conveyed was at the time worth at least $1,500—Rockhold, also says that there was an agreement and contract in writing between him and said Wm. D. Richards, as to reconveying the property to the effect aforesaid, and the contract signed and sealed by said W. D. Richards and Rockhold, was produced and proven by Rockhold, and it is of the same date as the deed, and is to the effect that Richards "agrees to convey by deed the said house and three lots" to Rockhold upon the payment

of $600, on or before the 1st day of November, 1867, conveyed by Rockhold to Wm. D. Richards, and in case Rockhold fails to pay the said sum of $600, against the 1st of April, 1868, the agreement to be null and void. Rockhold, also testifies that he had a conversation with plaintiff since the deed was made to him, by his father, for the house and lots in which he told plaintiff that he thought "very hard of him for having anything to do with it, that he knew the circumstances, and knew that the deed was only made to secure that amount of money to his father, and he (plaintiff,) replied to him that he understood he was thinking hard of us, but it was not his father's intention to cheat him (Rockhold,) out of the property, but so that others could not get hold of it" &c. Rockhold's evidence is not impeached—neither of the Richards give evidence in the cause. John Fisher, filed his answer in which he substantially denies all the material allegations of plaintiff's bill as to his having been paid the purchase money, &c., and alleges that the $160, of purchase money subject to the credits of said $18, and $35, paid by Hopkins, is still due and unpaid, and he insists that he shall not be required to convey said lot No. 23 unless his said purchase money is paid, and asks if his purchase money is not paid within a reasonable time that the lot be sold to pay the same.

At the hearing of the cause on the 9th of May, 1873 the circuit court was of "opinion under the facts and circumstances proven in the cause, the demand for purchase money paid on the two bonds from Fisher to Petty constituted a vendor's lien on said lot number twenty-three in the hands of the plaintiff at the institution of this suit and adjudged, ordered and decreed, that John Fisher execute and deliver, for recordation, a proper deed to plaintiff, for said lot number twenty-three, with covenants of general warranty &c., and file the same with the papers of the cause within sixty days from the date of the decree and that defendant Hopkins or some person for him pay John Fisher $160, with interest

thereon from the 1st day of November, 1857, subject to a credit of $14.08 as of October 1, 1859, and $35.00 paid June 1, 1860, and the costs of this suit, and that unless the same is paid in said sixty days that said lot number twenty-three be sold" &c., and special commissioners are appointed for that purpose.

From this decree the plaintiff has obtained an appeal to this Court.

There are other facts proven in the case, which I have not stated which are not without weight against the plaintiff and his father, in the cause, but I have only stated such as I deem necessary.

Fisher not having made a deed conveying the lot he had a purchase money lien thereon for so much of the purchase money as was due, and unpaid to him, and had the right to enforce the same in a court of equity, against the lot in the hands of the plaintiff. And if his purchase money was paid by offsetting the same against the said forthcoming bond judgment (which does not appear to have been done) then as the forthcoming bond judgment was rendered against Rockhold & Fisher as surety before Rockhold conveyed the lot to Wm. D. Richards, the judgment was at the time of the conveyance, for the indemnity and security of Fisher, as surety, a lien on all the lots conveyed by Rockhold to Wm. D. Richards including said lot number twenty-three, and as Wm. D. Richards had notice of said lien at the time of his purchase, and the conveyance to him, the said lots were liable to the lien in his hands after the conveyance. And as it appears that plaintiff had notice of said lien, before his purchase and conveyance to him, the said forthcoming bond judgment, is likewise a lien on the lots in his hands, for the indemnity and security of Fisher as surety for the amount thereof. So that whether Fisher's purchase money was settled by offsetting the said forthcoming bond judgment against it, or not, under the circumstances appearing in this case is immaterial to the plaintiff.

But as I have already stated the evidence shows that the forthcoming bond judgment, was settled by Rockhold the principal with Hopkins, and nothing improper in the transaction appears in the cause against Fisher, but on the contrary he seems to have acted in good faith in the whole transaction. There is no error in the decree of the circuit court except as to the credit of $14.08 as of the 1st of October, 1859, paid by O. W. Petty. Instead of that amount as appears from the pleadings, papers and evidence which are a part of the record, the credit should have been $18.00 as of 3rd of April, 1860. But this Court will not reverse the decree for that cause but will correct the same in that respect, as might have been done by the court below on motion and affirm the decree of the circuit court, with costs to the appellee in this Court and $30 damages.

The other Judges concurred.

DECREE CORRECTED IN APPELLATE COURT AND AFFIRMED.