# WHEELING.

## LEACH *et al v.* BUCKNER, ADM'R.

Submitted June 18, 1879.     Decided December 3, 1881.

*(PATTON, JUDGE, Absent.)

1. The *ex parte* settlement of a fiduciary is only *prima facie* correct; and parties interested may file a bill to surcharge and falsify the account so settled.
2. Where a person qualifies as *domicilliary* and *ancillary* administrator of an estate and a part of the heirs and distributees live in Ohio, where the intestate died, and where a part of his estate was situated; and the other heirs and distributees or a part thereof and the administrator live in West Virginia, and the administrator makes a fraudulent *ex parte* settlement of his administration-accounts before a probate court in Ohio, in which he fraudulently omits to charge himself with $1,500.00, which he had received, and which he fraudulently reported to said probate court, that he had settled in West Virginia, and he fraudulently by means of a false receipt obtains before said probate court credit improperly for $500.00, and by this false and fraudulent means brings the estate in debt to him over $1,700.00, and then comes back to West Virginia, and goes before a commissioner to settle his accounts in this State and credits himself with this false balance, a bill is properly filed by the heirs and distributees in West Virginia, where he settled his account, to surcharge and falsify his account and to show, that the balance of over $1,700.00 was false and fraudulent, and to have the account corrected.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood pronounced on the 13th day of October, 1877, in a cause in said court then pending, wherein Mary Leach and others were plaintiffs, and Robert Buckner, administrator, was defendant, allowed upon the petition of said Buckner.

---

*Cause submitted before Judge P. took his seat.

Hon. James M. Jackson, Judge of the fifth judicial circuit, pronounced the decree appealed from.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

In 1875 the plaintiffs, heirs at law of Willis Leach, deceased, filed their bill in the circuit court of Wood county against Robert Buckner, administrator of the said Willis Leach, Louisa Buckner his wife, also an heir at law of said Willis Leach deceased, and the unknown heirs of John Leach deceased, who, as the bill shows, were also heirs at law of the said Willis. The bill alleges, that said Willis Leach removed in 1865 from said Wood county, West Virginia, to Vinton county, Ohio, and in said Vinton county in 1866 died, leaving the said parties his heirs at law; that he left considerable real and personal property in Ohio and personal property in the State of West Virginia; that in August 1866 the said defendant, Robert Buckner, was by the probate court of Vinton county, Ohio, appointed administrator of the estate of said Willis Leach deceased; and that he was also by the proper authority in the said county of Wood appointed administrator of the estate of said Willis Leach, and "that he entered upon the office of administrator in said States respectively, he being a citizen and resident then and now of the county of Wood and State of West Virginia. The bill charges, that said Willis Leach owed no debts, and that the said Buckner entered upon and took possession of all the property left by said Willis in the State of Ohio, and did not render a true and correct inventory of the said property, which came into his hands; that he caused a petition to be filed in the probate court in Vinton county, Ohio, and obtained a decree or order to sell a tract of land situated in said county, and made said sale, at which Robert A. Byrd became the purchaser at the price of $4,000.00, of which he paid said Buckner $2,000.00 n cash, and executed his note for $2,000.00, the residue of said purchase-money, which said Byrd after a reduction made reducing the sum to $1,700.00 paid. Abstracts of the proceedings of said Ohio probate court are filed with the bill.

The bill further charges, that afterwards said Buckner, on

the —— day of October, 1870, pretended to have a settlement of his administration-accounts before the probate court of Vinton county, in which he fraudulently neglected and omitted to charge himself with the amount of the note executed to him by said Byrd as aforesaid, but only charged himself with the purchase-money received from Byrd, the cash-payment of $2,000.00 ; and that said Buckner, as such administrator, fraudulently refused and failed to state and settle his account before the said probate court in making his *final* settlement with said court, in that he did not charge himself with the residue of the said purchase-money paid him by said Byrd, and that said " *Buckner falsely and fraudulently alleged before said probate court, that he had accounted for the said balance of purchase-money so due from the said R. A. Byrd as aforesaid in a probated settlement he pretended to have made in the State of West Virginia ; the contrary thereof being the truth, that no such account had or ever has been taken and had with the said administrator in the State of West Virginia, in which the said administrator has rendered any account whatever of the said balance of purchase-money.*"

The bill further alleges, that the said Buckner by his false method of accounting and omission to render any account of said item in his said pretended final settlement brought the said estate in debt to him $1,709.93, and that this pretended balance was reached by falsely and fraudulently charging against the said estate certain pretended items of charges paid by him, among which is a credit to himself of $500.00 paid to the widow, Mary Leach, which the bill charges is unjust and untrue, and it surcharges and falsifies the same. Other items of surcharge and falsification are set out in the bill not necessary to notice. The bill further charges upon information and belief, that "said Buckner produced before the said probate court a false and pretended receipt for $400.00 or $500.00" claiming that he had paid the widow that sum of money, whereas in truth and fact he paid her no such sum of money at any time, that said pretended receipt is false and untrue ; that said Buckner filed his account as such administrator in 1873 with S. C. Shaw, one of the commissioners of Wood county, West Virginia, and a pretended accounting and settlement was had and made before said com-

missioner of his said administration; and that said Buckner nowhere in any way whatsoever rendered any account of the balance of said purchase-money so paid to him by said R. A. Byrd, one of the orators in the bill.  The bill further charges, that "the said settlement so made by the said Buckner by and before the said S. C. Shaw, commissioner as aforesaid, is false and untrue in this, in allowing the said administrator the said sum of $1,709.93 balance, pretended to be due him on setlement before the probate court in the State of Ohio as aforesaid, and also in each and every item of credits in said settlement; that the said account and settlement is false and unjust, and your orators and oratrixes therefore do surcharge and falsify the same and every part thereof as fraudulent and inequitable."  The said last mentioned settlement is also exhibited with the bill, as also the *ex parte* settlement before the probate court of Vinton county, Ohio.

The bill calls upon the said Buckner to "discover and produce a true and correct list of all the notes, bills, bonds, claims and moneys of the estate, that came into his hands as administrator, either in this State or in the State of Ohio; that he may be required to exhibit with his answer all his pretended vouchers mentioned in his settlement in the probate court of Vinton county, Ohio, and in that made before the said S. C. Shaw; that he may be required specially to produce and file with his said answer a true and perfect account of all the moneys paid to him by the said R. A. Byrd on account of the said sale of the said tract of land under the decree of the probate court aforesaid with the dates and several amounts thereof; that he may produce and file with his said answer a complete statement of all the money collected by him in the said State of Ohio; that he may be required to produce and file with his answer the alleged receipts of the said Mary Leach, widow, for pretended sums of money as having been paid to her by him; that the accounts of the said administrator may be surcharged as to the matter omitted, and falsified as to the items charged as false and untrue; that he may be required to produce and file all his pretended vouchers and receipts before one of the masters of this court; and that an account may be ordered and taken of all the administrations of said estate by the said Buckner  *  *  *; and that your

orator and oratrixes may have a decree against said Buckner for the amount due to them from him and a distribution of the amount thereof;" and for general relief.

In June, 1876, the said Buckner demurred to the plaintiffs bill, and assigned as grounds of demurrer, " that the said bill, in case the same were true, contains no matter of equity, whereon this court can ground any decree or give complainant any relief as against this defendant  *  *  * ; that in so far as the said plaintiffs in their bill complain of this defendant on account of his administration of the estate of said Willis Leach, deceased, in virtue of his appointment as such administrator by the probate court of Vinton county, in the State of Ohio, beyond the limits of this State, and file as an exhibit with their said bill a copy of the record containing a statement of the accounts of the partial and final settlements of this defendant as such administrator before said probate court of said Vinton county, State of Ohio, and seek to surcharge and falsify the same before this honorable court, the said plaintiffs are estopped by the said record from going behind or calling in question before this honorable court the fairness or correctness of said accounts and settlements," &c. Another ground of demurrer is, that so much of the bill as seeks to surcharge and falsify the settlement before commissioner Shaw is insufficient " because the bill does not set forth and specify the items or charges in said last mentioned settlement, which are alleged to be false and fraudulent or the matters omitted from said settlement."

The demurrer was overruled, and the defendant did not at any time answer the bill.

In April, 1877, the cause was referred to a master with leave to the plaintiffs to surcharge and falsify the account of said administrator settled before said commissioner, first, as to the item allowed as an alleged balance of settlement with the probate court of Vinton county, Ohio, of $1,709.93, which pretended balance was, as alleged in the bill, derived from allowing certain claims falsely and fraudulently, as set out in the bill, among which was the credit of $500.00, alleged to have been paid to the widow, Mary Leach ; secondly, to surcharge the accounts, because, as alleged and charged in the bill, the

sum of $2,000.00 more or less, balance of purchase-money paid by Byrd, was omitted from the account.

The commissioner made his report charging the said administrator with $2,000.00 balance of purchase-money of land, omitted from his account, and falsifying the account to the extent of the $500.00, which he found the said administrator had not paid to Mrs. Leach ; and found the administrator indebted to the estate principal and interest on the 14th day of September, 1877, in the sum of $1,902.74.  Buckner by counsel excepted to this report for the same reason stated by him as grounds of his demurrer, and also on the ground that the proof failed to show, that he ought not to have the $500.00 credit, and also to the charge of $2,000.00 and interest, because the proof shows, that only $1,500.00 was paid by Byrd after the down-payment, also to compounding the interest.  The court overruled the first exception to the rejection of the $500.00 credit but sustained the second and third, and the commissioner by a supplement report conformed to the views of the court, and by a proper calculation, if the court had jurisdiction, found by giving the proper interest and charging the administrator with $1,500.00, purchase-money received, which he had failed to charge himself with, and denying him the credit of $500.00, that on the 5th day of September, 1873, the date of his settlement before Shaw, commissioner, he as such administrator was indebted to the said estate in the sum of $814.79.  The court on the 13th day of October, 1877, finding he was indebted to the said estate in the sum aforesaid, decreed in favor of the plaintiff against the defendant, Robert Buckner, for said sum with interest thereon from the said 5th day of September, 1873, and the costs of the suit.

From this decree Buckner appealed.

*A. I. Boreman* for appellant cited the following authorities: 10 Pet. 449 ; 9 Leigh 119 ; 9 Gratt. 323 ; 16 Gratt. 321 ; 27 Gratt. 624 ; 12 W. Va. 1 ; 1 Greenl. Ev. § 550 and notes ; 15 Pet. 1 ; 18 How. (U. S.) 16 ; 9 Wall. 740 ; 14 Gratt. 239 ; Whart. Conf. of Laws §§ 616, 617, 619, 631, (d.), 634 (h.), 636 (i.) ; 2 Kent Com. (s. p.) 428 ; 429, 434, (note a.) ; Story Eq. Pl. §§ 179, 179 (a.) ; Cent. Law Journ, vol. 7 p. 192 ; 13 How.

456; 1 Story Eq. Juris. § 525; 2 Rob. (old) Prac. 113–115; 3 Leigh 413; 19 Gratt. 465; 12 Leigh 112.

*John A. Hutchinson* for appellees cited the following authorities: 2 H. & M. 260; 4 Munf. 110; 12 Leigh 112; 9 Gratt. 445; 19 Gratt. 438; 10 Leigh 434; 6 Coke Rep. 46; 11 Gratt. 792; 8 Gratt. 353; 11 Leigh 25, 28; 1 Hare 484; 7 Cow. 64; 4 Ed. Chy. 346; 7 Paige 239; 33 Barb. 92; 14 Gratt. 240; 10 Pet. 449; 9 Leigh 119; 9 Gratt. 321; 27 Gratt. 624; 12 W. Va. 1; Kerr. Fraw. & Mis. 293; 20 How. State Tr. 544; 1 Humph. 715; 2 J. J. Marsh. 406; 26 N. Y. 146; 27 Gratt. 624; 2 Green (N. J. Chy.) 231; 10 W. Va. 782; 8 W. Va. 55; 9 Leigh 484; 26 Gratt. 127; 19 Gratt. 19; 8 Gratt. 280; 1 Gratt. 431; 1 Math. Dig. 291; 16 Gratt. 134; 18 Gratt. 376.

JOHNSON, PRESIDENT, announced the opinion of the Court.

The depositions clearly show, that the administrator received $1,500.00 purchase-money from Byrd, with which he failed to charge himself; and that he had given himself credit for $500.00, as paid to Mrs. Mary Leach, to which he was not entitled. The main question that demands our consideration in this cause is: Did the court of chancery in this State have jurisdiction to surcharge and falsify the account in the manner, in which it was done? If it had, we see no error in the decree, so far as it ascertained, that the defendant, Buckner, was indebted to the estate of his intestate in the amount ascertained in the decree. To show that the court had no authority or jurisdiction to review the settlement made in Ohio, counsel for appellant cites *Voorhees* v. *Bank of United States,* 10 Pet. 449; *Fisher* v. *Bassett,* 9 Leigh 119, Judge Tucker's opinion 131; *Cox* v. *Thomas's Adm'x,* 9 Gratt. 323, Judge Allen's opinion 325–6; *Gibson* v. *Beckham,* 16 Gratt. 321; *Lancaster* v. *Wilson,* 27 Gratt. 624; *Hall* v. *Hall,* 12 W. Va. 1.

*Voorhees* v. *Bank of the United States* was an action of ejectment, which was tried in the Circuit Court of the United States for the District of Ohio; and upon the trial the validity of an attachment, issued by the state court and under which the land was sold, was questioned. The Supreme Court says: "This was the judgment of a court of compe-

tent jurisdiction on all the acts preceding the sale, affirming their validity in the same manner as the judgment had affirmed the existence of a debt. There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have heen right, until the contrary appears."

In *Fisher* v. *Bassett et als.* it was held, that where a county or corporation court grants administration of the estate of a foreigner, who died abroad, and who had no residence in the county or corporation at the time of his death and had no estate of any kind there, so that in truth the state of facts is not such as to give the court jurisdiction to grant administration in the particular case according to the provisions of the statute, such a grant of administration is not *void* but only a *voidable* act, and therefore rightful acts of and fair dealings with the administrator consummated, before his administration is revoked or superseded, cannot be impeached.

In *Cox et als.* v. *Thomas's Adm'x et als.*, 9 Gratt. 323 it was held, that a judgment of a circuit court upon a notice and motion in favor of a creditor against a high sheriff or his administratrix for the default of his deputy in not paying over money collected on an execution, which issued from the county court, is conclusive of the jurisdiction of the court, unless reversed on appeal; and its validity cannot be called into question by the deputy or his sureties on a motion by the high sheriff or his administratrix against them founded on said judgment.

In *Gibson* v. *Beckham et als.*, 16 Gratt. 321 it was held, that where a court has cognizance of the subject-matter, its judgment, though it may be erroneous, is not void. It is binding, until it is set aside or reversed, and cannot be questioned incidently, acts done and bonds taken under it binding the obligors.

In *Lancaster* v. *Wilson*, it was held, that a judgment of a court of record could not be impeached in another action except for want of jurisdiction in the court or fraud in the parties or actors in it.

In *Hall* v. *Hall* it was held, that where a judgment or decree of a court of general civil jurisdiction is offered in evidence collaterally in another suit, its validity cannot be questioned for errors, which do not affect the jurisdiction of the

court. The counsel also relies on the following authorities: *Vaughn* v. *Northop,* 15 Pet. 1 ; *McLean* v. *Meek,* 18 How. 16 ; *Wilkins* v. *Ellet,* 9 Wall. 740 ; *Andrews* v. *Avory,* 14 Gratt. (Judge Moncure's opinion) 239–249 ; Whart. Con. L. 666 *et seq.* ; 2 Kent. Comm. 421–9 ; Story Eq. Pl. 179.

In *Vaughn* v. *Northop,* it was held, that every grant of administrators is strictly confined in its authority and operation to the limits of the territory of the government, which grants it, and does not *de jure* extend to other countries. It cannot confer as a matter of right any authority to collect assets of the deceased in any other State ; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of courtesy, which every nation is at liberty to yield or to withhold according to its own policy and pleasure with reference to its own institutions and the interests of its own citizens.

In *McLean* v. *Meek,* 18 How. 16, it was held, that the record of a debt against an administrator in our State is not sufficient evidence of the debt against the same administrator of the same estate in another State.

In *Wilkins* v. *Ellett,* 9 Wall. 740, it was held, that a voluntary payment of a debt to a foreign administrator was good as against the claim of an administrator duly appointed at the domicile of the debtor, in which last place the debt was paid; there having been no creditors of the intestate in this last place, nor any persons there entitled as distributees.

In *Andrews* v. *Avory et als.,* 14 Gratt. 229, it was held, that where an administrator appointed in Virginia, whose intestate lived and died in North Carolina and left no estate in Virginia, went to North Carolina and without qualifying there took possession of the assets and brought them back to Virginia, his sureties in Virginia were liable for his faithful administration of these assets.

It is not necessary to refer to the other authorities cited.

While not disputing the correctness of the principles laid down in the foregoing decisions, the counsel for appellees insists, that they do not cover the case made by the bill and have no application to a case like the one at bar, and he cites a number of pertinent cases, which we will proceed to review.

If there is no relief in a case like the one before us without

going to the State of Ohio to purge a settlement of a confessed, as he thinks, fraud upon the distributees of his intestate's estate estate, it would be inconvenient to say the least. The principle is well settled, that the *ex parte* settlement of a fiduciary is only *prima facie* correct, and parties interested may file a bill to surcharge and falsify the account so settled. *Anderson* v. *Fox,* 2 H. & M. 261 ; *Preston* v. *Gressom,* 4 Munf. 110 ; *Newton* v. *Poole,* 12 Leigh 112 ; *Peale* v. *Hickle,* 9 Gratt. 437 ; *Corbin* v. *Mills,* 19 Gratt. 438 ; *Shugart* v. *Thompson,* 10 Leigh 434 ; *McGuire* v. *Wright,* 18 W. Va. 507. Upon this question there is no doubt, and it will be borne in mind, that the *partial* and *final* settlements made by the defendant Buckner before the probate court of Vinton county, Ohio, like settlements made under our statute before a commissioner are *ex parte* settlements and nothing more.

In *Dickerson* v. *Hoomes's adm'r et als.,* 8 Gratt. 410, Moncure, J., in delivering the opinion of the court said : " The question is, whether the land descended to them in Kentucky is assets, and whether they ought to be bound for the value of said land descended to them, at least to the extent to which it actually came to their hands. I think this question should be answered in the affirmative. It is undoubtedly true, that real estate or immovable property is exclusively subject to the laws of the government, within whose territory it is situate, and that no writ of sequestration or execution or any order, judgment or decree of a foreign court can be enforced against it. But I think it no less true, that equity, as it acts primarily *in personam* and not merely *in rem.* may, where a person, against whom relief is sought, is within the jurisdiction, make a decree upon the ground of a contract or any equity subsisting between the parties respecting property situated out of the jurisdiction."

In *Powell* v. *Stratton et als.,* 11 Gratt., it was held, under the circumstances, that a person, who had qualified as administrator of an estate in Mississippi, should be held in Virginia to account for his administration.

Marshall, C. J., in *Massie* v. *Watts.* 6 Cranch 158, said . " This suit having been originally instituted in the court of Kentucky for the purpose of obtaining a conveyance for lands lying in the State of Ohio, an objection is made by the plain-

tiff in error, who was the defendant below, to the jurisdiction of the court, by which the decree was rendered. Taking into view the character of the suit in chancery brought to establish a prior title originating under the land-law of Virginia against a person claiming under a senior patent, considering it as a substitute for a *caveat* introduced by the peculiar circumstances attending these titles, this court is of opinion, that there is much reason for considering it as a local action, and for confining it to the court sitting within the state, in which the lands lie. Was this cause therefore to be considered as involving a naked question of title ? Were it, for example, a contract between Watts and Powell, the jurisdiction of the circuit court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction, wherever the person may be found, and the circumstance, that a question of title may be involved in the inquiry and may even constitute the essential point, on which the case depends, does not seem sufficient to arrest that jurisdiction."

In *Tunstall et al.* v. *Pollard's adm'r*, 11 Leigh 1, it was held, that an executor having taken probate of a testator's will and letters testamentary in England, and collected the assets of testator's estate there and brought them with him into Virginia but having never qualified as executor in Virginia is liable to be sued by the legatees in the court of chancery in Virginia for an account of his administration and for the legacies that remain unpaid. After an elaborate review of the authorities, Tucker, President, says : " Upon a full review of the whole subject I am of opinion, that justice, convenience and necessity require a recognition of the right to sue an executor who has qualified abroad, if he comes within the jurisdiction bringing the assets with him ; and no authority sustains the contrary proposition."

In *McNamara et ux.* v. *Dwyer et al.*, 7 Payne 239, it was held, that the court of chancery has jurisdiction to compel a foreign executor or administrator to account for the trust-funds, which he received abroad and brought with him into

this state ; and that, too, without taking out letters of administration on the estate of the decedent here.  See also *Campbell, adm'r,* v. *Tousey, ex'r,* 7 Cow. 64 ; *Brown* v. *Brown,* 4 Ed. Chy. 343 ; *Gulick, adm'r,* v. *Gulick et al.,* 33 Barb. 92.

The element of fraud comes into the case at bar and relieves it of much of the difficulty, that might otherwise surround it. A judgment or decree either foreign or domestic fraudulently obtained may be set aside and much more easily a fraudulent *ex parte settlement* of a *fiduciary.* 2 J. J. Marsh. 405 ; *Lazier* v. *Westcott,* 26 N. Y. 146 ; *Lancaster* v. *Wilson,* 27 Gratt. 624 ; *Boulton* v. *Scott's adm'r.,* 2 Green (N. J.) 231.  In such a case it is not necessary for such purpose to go to the State, where the party fraudulently obtained the decree, but such suit may be properly brought, where the party resides.  It is expressly charged in the bill, that the defendant, Robert Buckner, falsely and fraudulently represented to the probate court of Vinton county, Ohio, that he had accounted for the balance of the purchase-money due from R. A. Byrd, in a settlement which he had made in West Virginia, and that he imposed upon said court a false receipt for the $500.00, for which he there received credit for that sum as having been paid to the widow, Mary Leach.  These charges in the bill he does not controvert, and for the purposes of this suit they must be taken as true, although he was specially called upon in the bill for a discovery, and after ample opportunity had, he fails to answer the bill, and put the plaintiffs on proof of the charges of fraud explicitly made against him.  It thus appears, that he went to Ohio and fraudulently imposed a false settlement upon the probate court of Vinton county, Ohio, and by said false and fraudulent settlement brought the estate there in debt to him over $1,700.00, and then with his illgotten gains came back to West Virginia, where not only himself but a number of the plaintiffs live, and where he had been appointed and qualified as administrator of the estate of his intestate, and went before a commissioner and charged this false balance, so falsely and fraudulently obtained in Ohio against the estate, and then coolly folds his arms, refuses to answer the charges made against him and says : "You can't enquire here into my settlement made in Ohio."

Fraud vitiates everything it touches ; and a party guilty

of fraud cannot claim protection here because his fraud was committed in another State. The court had jurisdiction and had a right to surcharge and falsify the account settled before commissioner Shaw, and in doing so show that the balance of over $1,700.00 falsely and fraudulently obtained before the probate court of Ohio was false, and to show what he should have charged himself with there, and what he should have credited himself with there as charged in the bill, in order to see what should have been the balance there, and what should be the state of the account here. This was done and properly done in this suit and the amount of the administrator's indebtedness to the estate, when the account was corrected according to the bill and proofs, was ascertained. The defendant Buckner being an *ancillary* as well as *domicilliary* administrator, there can be no doubt about the correctness of the position we have assumed.

Was it error to decree, that the whole of the indebtedness of the defendant should be paid to the plaintiff? It is insisted by counsel for appellees, that if it was an error, it will not justify a reversal of the decree, but the decree in that case should be corrected and affirmed; and he cites the following authorities: *Henly* v. *Menefee,* 10 W. Va. 782; *Richards* v. *Fisher,* 8 W. Va. 55; *Handley* v. *Snodgrass,* 9 Leigh 484; *Mott* v. *Carter,* 26 Gratt. 127 ; *Graham* v. *Pierce,* 19 Gratt. 29. But none of these authorities apply to a case like this. It does not appear in the record, whether the heirs ought each to receive an equal share of this amount or not, nor what amount Buckner or his wife ought to receive therefrom. By an exhibit filed with the bill it appears, that a number of the plaintiffs owe debts, evidenced by notes, to the estate, which may have been and probably were settled in another manner, but it is impossible to tell from the record as it now is, what is the fact as to said settlement. We cannot correct the decree and affirm it under the circumstances of this case.

So far as said decree ordered the whole of said sum of money to be paid to the plaintiff, it is erroneous and must be reversed with costs to the appellant, to be paid by the appellees other than Louisa Buckner and the unknown heirs of John Leach ; and in all other respects said decree is affirmed and this cause is remanded to the circuit court of Wood county

with instructions to cause proper distribution to be made of said sum of money to those entitled thereto, and in the pro-portion to which they may be thereto entitled.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE REVERSED IN PART.    CAUSE REMANDED.