# WHEELING.

ROUSH *et al.* v. GRIFFITH *et al.*

Submitted September 5, 1908.    Decided June 11, 1909.

1. GUARDIAN AND WARD—*Guardians Liability—Negligence.*
   A guardian is liable to his ward, on a final settlement, not only for such money and estate as actually came into his hands, but also for such additional money or property, lost by his

negligence or failure of duty, as would have been received by him, had he exercised reasonable diligence and ordinary prudence in caring for his ward's estate. (p. 757.)

2.   Same—*Collection of Assets—Duty to Sue.*

It is the duty of a guardian to cause actions, for the recovery of debts due the ward, to be instituted in the name of the ward, by himself or some other person as next friend, when such proceedings are necessary for the preservation of the estate. (p. 757.)

3.   Same—*Collection of Assets—Presumption of Negligence.*

The existence of a good debt or demand due to the ward, at the date of the appointment of the guardian, and subsequent loss thereof, having been established, it is presumed, as matter of fact, that the loss resulted from negligence and dereliction of duty on the part of the guardian, and he should be charged with the debt or demand, as if he had collected it, unless he shows the loss is not attributable to his negligence or failure of duty. (p. 757.)

4.   Same—*Evidence—Settlement of Estate.*

The settlement of the accounts of the administrator of the estate of the father of a ward, who has given a bond, sufficient in penalty and with sureties approved by the probate court, showing indebtedness to the ward, constitutes sufficient ground for charging the guardian with the amount of such indebtedness, in the absence of evidence showing either collection or loss thereof without the fault of the guardian, it appearing that sufficient time has elapsed to raise a presumption of payment in favor of the administrator and so establish *prima facie* the loss of the debt. (p. 758.)

5.   Same—*Account—Recitals—Evidence.*

Recitals in such settlement of payments from the administrator to the guardian, though operative as evidence of indebtedness between the administrator and ward, are not sufficient to prove payment to the guardian. (p. 758.)

6.   Trusts—*Express Trusts—Enforcement—Laches.*

Though laches will run against an express trust, courts of equity apply the rule, in such cases, less readily than in cases of constructive trusts, and rarely ever do so, unless the circumstances disclose a defense in the nature of estoppel, such as intervention of the rights of third persons, loss of evidence, death of parties and witnesses, settlement or disavowal of the trust, acquiesced in by the *cestui que trust*, or the like. (p. 759.)

7.   Laches—*Enforcement of Trust.*

As to what constitutes laches barring an express trust, no

general rule, covering all cases, can be stated, and, for the most part, it depends upon the circumstances of the particular case. (p. 762.)

8.  GUARDIAN AND WARD—*Delay to Sue.*

A ward is not barred in equity by delaying suit to recover her estate from her guardian, for a period of fourteen years after attaining her majority, it not appearing that any evidence had been lost, or the trust disavowed or a settlement claimed at the time suit was brought; nor by delay in the prosecution of the suit after institution thereof, for a period of ten years, the guardian having been alive at the date of the institution thereof and for several years thereafter, and failed to assert any defense to the bill. (p. 763.)

Appeal from Circuit Court, Berkeley County.

Suit by Margaret V. Roush and others against D. S. Griffith and another, as administrators of Moses S. Grantham, deceased. From a judgment for plaintiffs, defendants appeal.

*Affirmed.*

FAULKNER, WALKER & WOODS, A. C. NADENBOUSCH and H. H. EMMERT, for appellants.

A. B. NOLL and H. B. GILKESON, for appellees.

POFFENBARGER, JUDGE:

The circuit court of Berkeley county having rendered a decree for $3,070.42 against the personal representatives and heirs of Moses S. Grantham, in favor of Margaret V. Roush, D. S. Griffith and E. Boyd Faulkner, administrators of Grantham, several of the heirs have appealed.

The decree charges the estate, on account of Grantham's guardianship for the plaintiff, commencing on the 16th day of June, 1854. Mrs. Roush was then a little child less than two years old, the daughter of William T. Seibert, who died sometime prior to the date aforesaid. Grantham qualified as her guardian and gave bond as such in the penalty of $3,200.00 with M. K. Seibert and B. Cushwa as sureties. The only evidence tending to show the amount of money that went into his hands as guardian is the settlement made by Barnett Cushwa, administrator of William T. Seibert, before Seaman Gerard, commissioner of the county court of Berkeley county, on the 12th day of August, 1854, showing that he had received, on account

of said estate, $4,333.10, and, after having made certain disbursements on account of indebtedness, had paid to the widow $700.00 and to Grantham, as guardian, on the 12th day of July, 1854, $500.00, and on August 9, 1854, $900.00, and then had in his hands a balance of $290.12 due the estate. The court, in its decree aforesaid charged the estate of Grantham with the $500.00 and $900.00 items and two-thirds of the $290.12 item. There is no evidence of Grantham's ever having paid anything to his ward, but, in her bill, she admitted payments of $600.00 at one time, $100.00 at another and $50.00 at another. The administrator and heirs, in their answers, say they are unable to find among the papers of Grantham any books or memoranda of any kind, showing either receipts or disbursements on account of said estate.

After attaining her majority, Margaret V. Seibert, only heir at law of William T. Seibert, and ward of Moses S. Grantham, intermarried with Charles Roush, and, in October, 1886, she and her husband brought this suit. Moses Grantham was then living and allowed the bill to be taken for confessed. Thereupon, an order of reference was made on the 7th day of February, 1887. On January 30, 1890, U. S. G. Pitzer, the commissioner to whom the cause had been referred, having ceased to be a commissioner of the court, it was ordered that J. T. Picking, another commissioner, execute the order of reference. On January 28, 1891, the death of Grantham was suggested, and thereupon it was ordered that the cause proceed in the names of Faulkner and Griffith, administrators. On March 7, 1893, Picking, commissioner, was again ordered to execute the decree. Nothing further seems to have been done, except the summoning of the administrators to appear before the commissioner on the 31st day of March, 1893, to testify in behalf of the defendant, for a period of ten years. At August rules, 1903, an amended and supplemental bill was filed, which differed from the original bill principally in this, that it charges the guardian with neglect of duty in not having made any settlement of his accounts, nor rendered to the plaintiff any statement thereof, wherefore she is, and has been unable to state what amount of money went into his hands; that "Book of Fiduciaries, Inventories and Settlements" No. 18, in which was recorded the original account of the estate of William T. Seibert, showing what personal estate.

had been paid to Grantham by the administrator, had been lost or destroyed in the Civil War, so that the plaintiff had had no means of knowing the amount with which her guardian was chargeable; and that recently a search of the clerk's office of the county court had revealed the original settlement made by Barnett Cushwa, administrator of Seibert, showing the matters hereinbefore stated. The only depositions taken are those of C. W. Doll, proving the stated account of Cushwa aforesaid to be in the hand writing of Seaman Gerard, commissioner, and signed by him; Allen B. Noll, proving the loss of record Book No. 18 and the finding, on the 29th day of June, 1903, of the settlement of Cushwa, made before Gerard, in a package, endorsed "Fiduciary Settlements for the Year 1854;" Margaret V. Roush, showing that she was sixteen months old when her father died, that her mother is now dead, that she had delayed bringing her suit because she had been expecting Grantham to come forward and settle with her and waiting for him to do so, and had often called upon him for a settlement; and I. L. Bender, clerk of the county court, proving the appointment of Barnett Cushwa, administrator, and the correctness of the copy of his settlement exhibited with the amended and supplemental bill.

Before the filing of this amended and supplemental bill, the administrators brought a creditors' suit against the estate of Grantham, to which Margaret V. Roush and her husband, plaintiffs here, were not made parties, and in which all the real estate of the decedent was sold, and the debts paid, and $4,000.00, the proceeds of sale of a certain piece of property known as "Grantham Hall," was, by agreement, held in the hands of a bonded commissioner in said creditors' suit, to await the decision in this cause. On finding the estate liable to the claim of Mrs. Roush, the two causes were consolidated and it was adjudged, ordered and decreed that the commissioner satisfy the same out of said sum remaining in his hands.

Insufficiency of the report of the settlement made by Cushwa, administrator, to prove payment to the guardian, by the entries or statements therein to the effect that he had made certain payments to him, is relied upon as conclusively overthrowing the decree; but this contention ignores liability on the part of the guardian for money or property which he might have reduced into his possession, by action or otherwise, even though the

nature of the claim was such as to require the action to be brought in the name of the ward by his next friend, in addition to money or property actually received by him, subject to his right to show that money or estate not received was lost otherwise than by his negligence or lack of prudent and diligent effort to obtain and preserve the same. A guardian is liable, not only for what has actually come into his hands, but also for what, by the exercise of reasonable diligence and prudent action, he might have obtained, but which he suffered to be lost by his negligence. The statute, section 7 chapter 82, Code 1899, requires him, on the expiration of his trust, to "deliver and pay all the estate and money in his hands, or with which he is chargeable, to those entitled thereto." In the opinion of Professor Minor, this statute imposes upon the guardian the duty to collect or cause to be collected all solvent debts due the ward, as appears from the following statement in 1 Min. Ins. 476, made after quoting the statute: "He must therefore account for all of the ward's estate, including all evidence of claims that did come, or, with due diligence, might have come into his possession." The statute is no doubt merely declaratory of law well established otherwise than by statute; for, in *Brown* v. *Brown's Adm'x,* 2 Wash. (Va.) 151, the court said; "Hence it appears that this money either was received by Thomas Brown, the guardian, or he was guilty of gross neglect of duty, either of which would be a proper ground for charging him therewith." *Lincoln's Adm'r.* v. *Stern,* 23 Grat. 816, impliedly asserts liability of the guardian for negligent loss of the ward's estate, never reduced to his possession, but recoverable in the name of the ward. A decree, based on this principle, was reversed, merely because there had been no enquiry into the condition of the claims, or as to whether they had been collected, were collectible, or lost, if at all, "through the default or neglect of the guardian." This basis of liability on the part of a guardian seems to be generally recognized by the courts. "Any funds which by the exercise of due diligence he (the guardian) would have received, as, for instance, sums due to the ward which he negligently failed to collect, or income which was lost by his failure properly to invest the funds or rent the real estate, will also be charged to him." 15 Am. & Eng. Ency. Law 92. This text is well sustained by numerous decisions cited in support

thereof. A guardian must collect from his predecessor, an executor or an administrator from whom an estate is due to his ward. *Burt* v. *Turner,* 85 N. C..500; *Bescher* v. *State,* 63 Ind. 302; *State* v. *Greensdale,* 106 Ind. 364; *Keenan's Estate,* 6 Kulp. 67; *Horton* v. *Horton,* 4 Ired. Eq. (N. C.) 54.

It appears here, beyond successful contradiction, that there was due from the administrator of the estate of the father of the ward, all the money that has been decreed against the estate of the guardian. The settlement established that fact as between the ward and the administrator of her father's estate, subject to the right to surcharge and falsify. *Campbell's Adm'r.* v. *White,* 14 W. Va. 122; *Van Winkle* v. *Blackford,* 33 W. Va. 573; *Seabright* v. *Seabright,* 28 W. Va. 412; *Leach* v. *Buckner,* 19 W. Va. 36; *Dearing* v. *Selvey,* 50 W. Va. 4. As the administrator in that settlement charged himself with an estate amply sufficient to cover the amount of the decree, and had given a bond for the faithful discharge and performance of the trust, sufficient in amount, and with security approved by the court, it must be assumed, *prima facie,* that the ward's claim against him could have been collected by the exercise of due diligence. In giving the report of the settlement this effect, we do not make it evidence of payment by the administrator to the guardian, but only of the fact that there existed a valid and solvent claim in favor of the ward. This fact so established, the law imposed upon the guardian a duty respecting the claim. His office and trust required him to take the custody and care of his ward's estate and preserve the same, and, after the lapse of a reasonable time, it presumes performance of this duty on his part, in the absence of a contrary showing made by him. Thus, when a debt is returned in an inventory by an executor, not noted as being either worthless or doubtful it will be presumed, when the executor settles his accounts, after ample time has elapsed for him to have collected such debt, that he has in fact collected it in full, and he will be charged with it as having been collected when it ought to have been collected, unless he relieves himself by showing that it has not been collected, and why collection thereof has not been made. *Anderson* v. *Piercy,* 20 W. Va. 282, 325; *Estill* v. *McClintic,* 11 W. Va. 416; *Crouch* v. *Davis,* 28 Grat. 100; *Dillard* v. *Tomlinson,* 1 Munf. 183; *Graham* v. *Davidson,* Dev. & B. (N. C.) 155; *Hickman* v. *Thornburg,* 3 Bush. (Ky.) 205; *Lawson* v.

*Copeland,* 2 Bro. 156. *Prima facie* an executor or other fiduciary is chargeable with all the assets and must account for them, but he may account by showing a loss which could not have been prevented by the exercise of due diligence and vigilance. *Van-Winkle* v. *Blackford,* 54 W. Va. 621, 654. There seems to be an apparent conflict in our decisions respecting the proposition above stated, since many of them say a fiduciary should not be charged with the amount of a note or other debt, until he has collected the same, or it has been made to appear that it has been converted to his own use or lost by his negligence. *Hooper* v. *Hooper,* 32 W. Va. 541; *Holt* v. *Holt,* 46 W. Va. 397. It seems to me, however, that this conflict is only apparent, and not real. The decisions in which the latter proposition is asserted and applied dealt with settlements made by fiduciaries for the purpose of founding thereon decrees against them, and not their liability in general. Of·course it would be improper to decree against an administrator, executor or guardian the amount of a valid debt remaining in his hands uncollected, since the debt is still enforcible against the debtor, and the estate for which the fiduciary has acted is not prejudiced otherwise than by delay, which is fully compensated by interest on the debt. Nor would it be proper to charge him personally with interest on an uncollected debt which is itself bearing interest in favor of the estate he represents. But when the question of ultimate and final liability arises, under the rule of law prescribing the whole duty of a fiduciary, it is to be determined by that rule, and not by minor, subsidiary rules which have to do only with the form of the settlement or the amount of money to be decreed or the time from which interest shall be charged. The distinction is very important for, upon it, depends the question whether the burden of proof, to show that the loss is due to the negligence of the fiduciary, rests upon him or upon the *cestui que trust.* The general principle of law, holding personal representatives and guardians to the duty of exercising care and diligence to collect and conserve the estate, necessarily casts upon them the burden of showing why claims, once established and shown to have existed, should not be charged to them, it clearly appearing that they have not been collected and have ceased to be collectible.

As has been already asserted, the evidence fully establishes the existence of an estate for which it was the duty of the guardian

to collect and preserve.  He qualified about the time the administrator ascertained the amount due the ward, and, presumably, that he might take charge of some estate of hers, and she appears to have had no other estate than the sum due her from the administrator, a circumstance strongly importing that he had knowledge of this particular estate.  A period of fifty years has elapsed since the duty devolved upon him.  If the money has not been collected by him, payment thereof would now be presumed by reason of the long lapse of time, in the absence of a contrary showing.  An effort to assert it against the estate of Seibert, or that of Cushwa, Seibert's administrator, would be presumptively futile for that reason.  Therefore, it may be safely said that, if the guardian did not collect it, he suffered it to be lost by his failure to proceed for the collection thereof when he should have done so, and his estate is, for that reason, if for no other, clearly liable therefor.

In this connection, however, we feel called upon, in view of the learned and able argument of counsel for the appellants, to say that we do not believe the settlement made by the administrator is alone sufficient to prove payment of the amounts in question to the guardian.  He was no party to that settlement and the statements therein made are not binding upon him.  The case is not within the rule, asserted by so many decisions of this and all other courts, declaring the settlement of a fiduciary *prima facie* correct.  That rule operates between the party who made the settlement and the legatees, distributees and others interested in the estate.  It operates for and against creditors of testators and intestates, for the reason that they come asserting the existence of assets in the hands of the personal representatives unadministered.  They stand in the shoes of the deceased person, asserting rights against the personal representative, in respect to the estate which went into his hands.  *Brown* v. *Brown's Adm'x*, 2 Wash. (Va.) 151, upon which counsel for the appellee rely, as sustaining the view that the settlement is evidence of payment to the guardian, seems to be in exact accord with the conclusions herein expressed.  The guardian in that case had made a memorandum in his own book, charging himself with a portion of the amount shown by the settlement of the administrator to be due to the ward.  This was some evidence tending to show payment and it was adverted to in the

opinion as such, but the court did not rest its decision upon
that. It said the guardian was liable for the whole amount,
even though he had not collected it, because it appeared that he
could have done so and that, if he had not, the money had been
lost by his negligence.

Further contentions are that the circumstances disclosed by
the record ought to have been regarded and held as showing a
settlement between the guardian and ward, acquiesced in for a
great number of years, and so barring relief under the principle
of laches, and that, though no settlement was made, or the evi-
dence is insufficient to establish one, the plaintiffs are barred
by their long delay in instituting the suit and their lack of dili-
gence in prosecuting it after it had been instituted. The estate
of the ward was small, less than $1,600.00, the interest on which,
it is said, would have been wholly insufficient for her support
and proper care and education, she having been a child of very
tender years at the time her estate went into the hands of her
guardian, or ought to have done so, entirely too young to have
been bound out as an apprentice, so as to obtain her support, or
otherwise to have obtained it, so that it is reasonable to suppose
a part of the *corpus* of the fund was expended for her benefit,
and the bill admits the receipt of $750.00 in money, nearly one-
half of the original sum. This evidence could not set up or
establish a settlement otherwise than by mere presumption or
inference, under the rules and principles governing presumption
of payment. Payment will be presumed, as matter of fact, both
at law and in equity, after the lapse of twenty years, provided
the creditor labors under no disability. *Caldwell's Ex'r.* v.
*Prindle's Adm'r,* 19 W. Va. 604; *Criss* v. *Criss,* 28 W. Va. 388;
*Seymour* v. *Alkire,* 47 W. Va. 302. No inference of payment
could arise as between guardian and ward, from mere lapse of
time until after the termination of the guardianship. The ward
in this instance did not attain her majority until 1872. There
is no presumption that anything was paid over to her until after
that date, for such payment would have been in violation of the
duty of the guardian, and voidable by the ward on coming of
age. The utmost that he could have done would have been to
expend money necessary for her support and education. After
that date, he paid her $750.00. Any inference that this amount
was agreed upon between them as full payment is negatived by

her later conduct. She instituted this suit against him, in view of his failure to settle, in 1886, and he allowed the original bill in this cause to be taken for confessed as to him. Both at law and in equity, payment may be inferred from facts and circumstances, sufficient to warrant the inference, although the period covered by the transaction between the parties is less than twenty years. *Sadler* v. *Kennedy,* 11 W. Va. 187; *Caldwell* v. *Prindle,* 11 W. Va. 307; *Campbell* v. *Alkire,* 24 W. Va. 674. Such inference does not rest upon mere lapse of time, but upon a combination of lapse of time and circumstances and conduct indicating payment. We are unable to accede to the view that the circumstances revealed here would warrant such conclusion. There is no evidence of any settlement. The theory of settlement rests altogether upon inference and the inference is negatived by the conduct of both parties. She brought suit against him and he failed to deny or resist the demand set up in the bill and allowed a decree of reference to be entered for an inquiry as to the amount of his liability. His simple statement under oath that the debt due his ward was worthless, or had been lost by means beyond his control, would have made a *prima facie* case in his favor and cast upon the ward the burden of proving the contrary. *Holt* v. *Holt,* cited; *Van Winkle* v. *Blackford,* cited; *Lincoln's Adm'r* v. *Stern,* 23 Grat. 816. These authorities seem clearly to import this, but, if they do not, and his answer would not have had such effect, his assertion of a defense in his life time, in response to the challenge of the suit, would have been conduct, tending to sustain the contentions of settlement and worthlessness of the demand, excusing collection. Conversely, failure to make defense is conduct, significant of acquiescence in the theory of no final payment or settlement, on which the suit is projected.

All of this conduct is likewise important on the inquiry as to whether relief is barred by laches independently of any settlement. In this connection, it must be observed, in the outset, that the guardianship was an express trust against which the statute of limitations never runs, and under which the principle of laches does not operate so freely and extensively as it does in the case of a constructive trust, unless the trust has been disavowed or repudiated, and it is not pretended that there has been any repudiation of it in this instance. We do not doubt

that long lapse of time will bar relief to the beneficiary of an express trust, but it must be so long and the circumstances such in character as to establish clearly a relinquishment or abandonment thereof or a situation, occasioned by the death of witnesses, loss of evidence, or other matter in the nature of an estoppel, that will make it clearly inequitable and unjust to enforce it. *Bargamin* v. *Clark,* 20 Grat. 544. Legacies were held barred by lapse of time independently of the probability that they had been paid, in *Anderson* v. *Burwell,* 6 Grat. 405. The claims for these legacies had been asserted fifty-odd years after they had accrued. It further appeared however, that something had been paid on them and possibly that the full amounts thereof had been paid. Many English decisions apply the principle of laches against legatees and distributees. The leading case on the subject is *Campbell* v. *Graham,* 1 Russ. & M. 453, in which legacies were presumed to have been satisfied on the lapse of 27 years after demand for the payment thereof. Lord Brougham reviewed, in that case, all the former decisions on the subject and re-affirmed the doctrine of *Hercy* v. *Dinwoody,* 4 Bro. C. C. 257 (2 Ves. Jr. 87,) that the particular circumstances of each case must determine the question, and that mere lapse of time does not in equity absolutely bar a claim of that kind. In *Hercy* v. *Dinwoody,* Lord Alvanley said: "I know no rule that has established that mere length of time will bar. If I did, I would dismiss the bill. Therefore, that being the case, I am to say whether under such circumstances a bar can be presumed. * * * * The question in all these cases is, whether there are motives of public policy or private inconvenience to induce the court to say, under all the circumstances, the suit ought not to be entertained." See also *St. John* v. *Turner,* 2 Vern. 418, holding a bill by a mortgagor to redeem barred by the lapse of 26 years; and *Pearson* v. *Belchier,* 4 Ves. Jr. 628, holding an express trust barred by the lapse of 50 years. In many of these cases, however, the principle of estoppel operated. The parties slept upon their rights until estates had been distributed and other transactions had occurred, vesting rights in third parties, which would not have happened had the plaintiffs asserted their demands within reasonable time. Nothing of that kind has happened in this case. Time has run, it is true, and the suit instituted has not been diligently prosecuted. The excuse for de-

lay, based upon the loss of the book containing settlements of fiduciaries, is not very well founded, since it must have been known, that the original paper copied into that book had been filed in the office of the clerk of the county court and remained there, unless it, too, had been lost. It had not been lost and was found just where the parties might reasonably have expected to find it. It contains all the evidence now relied upon and could have been produced in 1886, by the exercise of reasonable diligence, as well as in 1903. However, the delay, in discovering and producing it and prosecuting the suit, does not clearly appear to have prejudiced the guardian or his personal representatives. From no evidence in the case, admission of the bill of averment of the answer, does it appear that he ever kept any books or took any receipts, or had any other evidence, by which this demand could have been defeated. There is nothing in the record, therefore, upon which any presumption of loss of evidence other than his own testimony, can be founded; and he was given an opportunity in his lifetime to make defense to the bill. During all these years the demand has been asserted against him and his estate, and the assertion thereof completely negatives any inference of abandonment or relinquishment of the claim. Continuous assertion of a claim is a potent circumstance, operating to excuse delay. *Southern R. R. Co.* v. *Gregg,* 101 Va. 308; *Griffin* v. *McCauley,* 7 Grat. 476; *Green* v. *Griffin,* 1 Va. Dec. 858. Lack of diligence, in prosecuting a suit after it has been instituted, will sometimes bar relief on the principle of laches, but it takes a clear case of negligence and want of diligence to effect it. In *Roberts* v. *Colvin,* 3 Grat. 358, a ward having filed a bill against the administratrix of her guardian for an account, let the suit linger for 24 years, and then was permitted to sue the sureties of the guardian and recover, the court holding that the lapse of time, during which she was prosecuting the claim against the administratrix of the guardian, furnished no ground for exoneration of the sureties.

Our conclusion, founded upon the principles above stated, applied to the facts and circumstances disclosed, is that the plaintiffs were not barred by laches and that the decree must be affirmed.

*Affirmed.*

BRANNON, JUDGE, (*dissenting*:)

I dissent, first, because I do not think that the *ex parte* settlement of the administrator is evidence against the guardian, a stranger. It is an *in rem, ex parte* proceeding, and *res inter alios acta.* The guardian was not a party to it. Strange that a man should be bound by a legal procedure to which he was no party.

Second, I dissent because of laches. Twenty years is what Lord Redesdale calls the common law of courts of equity, saying "That every right of action that accrues, whatever it may be, must be acted on at the utmost within twenty years." Cited and approved in *Bowman* v. *Wathen,* 1 How. 189, and in opinion in *Bargamin* v. *Clark,* 20 Grat. 553, and opinion in *Carr* v. *Chapman,* 5 Leigh 364. The U. S. Supreme Court says in *Janey* v. *Lupton,* 13 Peters 381, that suit must be brought within the period which by the statute is fixed in matters of account.

Thirdly, I dissent because of delay in the prosecution of the suit after it was brought. It is a rule of equity that claims must not only be brought forward within a reasonable time, but also that when suit is once brought it must be prosecuted with reasonable diligence. *Hays* v. *Good,* 7 Leigh 452; *Crawford* v. *Patterson,* 11 Grat. 374; *Buster* v. *Holland,* 27 W. Va. 511; *Johnson* v. *Standard,* 148 U. S. 360; *Willard* v. *Wood,* 164 *Id.* 502; *Covington* v. *Griffin,* 98 Va. 24. I regard the case of *Hays* v. *Good,* 7 Leigh 452, just like this case.