## McLEAN AND WIFE v. HOSEA AND GODBOLD, G'DNS.

1. Guardians, who take a mortgage on property estimated to be worth $3,500, to secure a debt due their ward of about $2,000, and permit it to be sold at public sale for $540, are guilty of such negligence, as will make them responsible to their ward for the loss.

Error to the Orphans' Court of Wilcox.

THIS was a proceeding before his Honor D. W. Sterrett, for a settlement of the accounts of the defendants in error, guardians. The only question presented for revision, is the liability of the guardians, for a note of $1,840 69, dated the 21st November, 1843, and due the first January after, executed payable to said guardians by T. Starke, with Samuel Forward as his surety. From an exceptive allegation, taken at the trial, it appears that at the time the note was executed, both Starke and Forward were worth, each of them, large estates in land and negroes. That in the spring of 1845,

McLean and wife v. Hosea and Godbold, guardians.

Forward conveyed away all his property, in trust to secure his own creditors.

It was also proved by Starke, that in 1845 he became doubtful of his own pecuniary situation, and being anxious to secure Godbold and Hosea, on the 18th June, 1845, he executed to them a mortgage, as collateral security to the note, on a tract of land, which was then, and is now, worth largely more than the amount of the note.

It was further proved, that in December, 1845, Forward notified the guardians to sue on the note ; that they did sue to the first court afterwards, and obtained judgment, and that if suit had been promptly commenced on the note, after its maturity, the money could have been made, out of either Forward or Starke, previous to June, 1845. A short time after Starke executed his mortgage, all his other property was levied on, and sold by the sheriff, and that he is now insolvent. The mortgage was upon a tract of land then, and now, worth $3,000, and a house and lot of land in the town of Suggsville, worth $500. It further appeared, that the guardians sold the said mortgaged property, on the first August, 1846, upon due notice; the plantation for $440, and the house and lot for $100 ; but there was no suspicion of any unfairness on the part of the guardians, in and about the said sale.

Upon these facts, the plaintiffs in error contended, that the guardians had by their conduct in the premises, subjected themselves to account for the said note, and interest, but the court decided they were not liable, and discharged them from the payment of the same. This matter is now assigned as error.

C. C. SELLERS, for the plaintiffs in error.

T. W. BETHEA, for defendants in error.

Courts will be extremely liberal in making any possible allowance, and cautious not to hold executors and administrators liable on slight grounds. 2 Williams on Ex'rs, 1105. When reasonable care and diligence are exercised, they are not responsible for losses which prudent management could not foresee and avoid. 6 Halstead, 165; 6 Watts, 185.

When an executor puts out money on real security, which there was then no reason to suspect, but which afterwards turns out bad, he is not liable for the loss. 2 Williams on Ex'rs, 1117. Guardians neglecting to invest their wards' money, are liable for interest. 4 S. & R. 112; 2 Wms. on Ex'rs, 1132; 2 Lomax on Ex'rs, 296; 5 Rawle's Ex'rs, 323.

An executor or administrator is not bound to call in money invested on real security when no risk is apparent. 2 Wms. on Ex'rs, 1117.

As to discharge of security, by giving time to principal. 3 Stewart, 14; 2 Id. 63; 6 Porter, 166.

The mortgage was taken as collateral and additional security, and no time given. 3 Ala. R. 409.

COLLIER, C. J.—The office of guardian was originated upon the hypothesis that persons of immature years, were incapable of protecting their own interests. An acceptance of such a trust imposes an obligation to perform its duties— among the most prominent of which is, the use of diligence in managing and taking care of the ward's estate. For if it be lost or injured by the negligence or misfeasance of the guardian, he is liable at least to the same extent that any trustee would be under the same circumstances. See Tibbs v. Carpenter, 1 Madd. R. 298; Powell v. Evans, 5 Vesey's R. 839; Eagleston v. Kington, 8 Id. 466; Ram. on Assets, 538; 2 Kent's Com. 1st ed., 187, et seq.; 2 Kinne's Comp. 391, et seq., and cases there cited; Johnson's Appeal, 12 Serg. & R. Rep. 317; Monell v. Monell, 5 Johns. Ch. Rep. 286. It is incumbent on a trustee to manage the trust estate in the same manner that a discreet man would manage his own concerns, and he is accountable if he neglects to perform his duty. Rainsford v. Rainsford, Rice's Eq. Rep. 343. If he acts bona fide, and with due diligence he will be protected. But if he grossly violates his duty, or is guilty of unreasonable negligence, his acts are inspected with severity, and rules of strict, if not rigorous justice, are applied. Diffendorfer v. Winder, 3 G. & Johns. 311; Shepherd v. Towgood, Turn. & Russ. Rep. 379; Hester v. Hester, Dev. Eq. Rep. 328. In The Bank of Virginia v. Craig, 6 Leigh's Rep. 399, it

was held, that if a guardian unnecessarily sell bank stock belonging to his ward, and appropriate the proceeds, he and his sureties shall be held to replace the stock, or account for and pay its present value, and all dividends accruing thereon since the sale ; and commissions were allowed to the guardian on the dividends only.    In respect to an executor, it has been said that he should collect the effects of the testator with reasonable diligence ; and if by delaying to commence an action he has enabled a debtor of the deceased to avail himself of the statute of limitations, he becomes personally answerable.    1 Lomax on Ex'rs, 381.

In Green v. Winter, 1 Johns. Ch. Rep. 27, a trustee agreed to purchase and pay for a farm at the request of the *cestui que trust*, out of the proceeds of the trust estate.    He gave his bond for the purchase money, secured by a mortgage on the premises ; but when the bond became due he refused to pay it, and procured a foreclosure of the mortgage and sale of the farm at a loss of $4,000 : *Held*, that the trustee was chargeable for this loss and all the costs of the suit.    So, in Taylor v. Tabrum, 6 Sim. Rep. 281, trustees who were directed to sell an estate as soon as conveniently might be after their testator's death, refused, by the desire of one of the parties interested, an offer of sixty-six hundred pounds for the estate, and afterwards sold it for thirty-six hundred pounds. The court charged them with the difference between the price offered, and that at which the estate was sold.

A trustee, it is said, is bound by his implied obligation to perform all those acts, which are necessary and proper for the due execution of the trust which he has undertaken.    If he has acted with good faith in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust estate.    2 Story's Eq. § 1267 to 1272.

In the case at bar, the mortgagees were not bound by the terms of the mortgage to sell on any particular day—although notice had been given of a sale on a particular day, it was allowable to postpone it to a day certain, or indefinitely. If, as conceded, the security was intended for the benefit of the ward of the mortgagees, it was their duty to have pro-

crastinated a sale, until the price offered approximated a fair cash valuation, or furnished a sufficient sum to pay the debt intended to be secured. No prudent man would ordinarily sell his own estate worth thirty-five hundred dollars, for five or six hundred; nor would he sacrifice a real security of that value (for so small a sum,) which was the only probable means of realizing a debt of some two thousand dollars. Considering the power and duty of the guardians in the collection of money due their ward, especially in the case at bar, and it is impossible to say that they are not chargeable' with negligence. If they had compounded the debt, released, or suffered it by neglect or other fault of theirs to become unavailable, their inattention to the interest of the ward would be palpable and confessed. Upon principle, such a case is not distinguishable from the present. Here, property worth nearly twice as much as the demand due the ward was placed under the guardians' control—they were authorized to sell it any time after a day prescribed, and did actually sell it for about one fourth the amount of the debt. This brief statement of facts shows quite as satisfactorily as the most extended argument could do, that the fiducial power of the defendants has not been prudently exercised, and with a proper regard to the interest of their ward. The law, we have seen, makes them responsible for the loss which has been occasioned by their negligence or want of discretion; and the judgment of the orphans' court is consequently reversed, and the cause remanded.