## HUGHES vs. MITCHELL.

1. A final settlement made by a guardian with the Orphans' Court, in which a balance is found to be due from him to his ward, is evidence against him of a debt for the amount of that balance due from him to his ward, although as a judgment, the settlement would be considered void, because not rendered in favor of any one, and no execution could issue, upon it.

2. A guardian who has notice of a debt due to his ward, and makes no attempt to collect it, is chargeable on final settlement with the amount of the debt, if it is lost through his negligence.

3. When property of the guardian is sold under execution issued on a final decree rendered against him by the Orphans' Court, and the sale is afterwards set aside, and the execution quashed on account of the reversal of the decree by the Supreme Court, the guardian is not entitled on another final settlement, to a credit for the amount for which the property sold, or any part thereof. The title to the property, if ever divested at all, being restored to him when the sale is set aside, the presumption arises in the absence of all proof to the contrary, that he has regained the possession of it, or at least that its value has not been lost to him.

4. When a guardian is charged with a particular sum which has been litigated, he is also properly chargeable with the costs attending the litigation of it.

ERROR to the Orphans' Court of Lowndes.

David Hughes, guardian of Flora Ann Ringstaff, was cited by Daniel Mitchell, the succeeding guardian, to make a final settlement in the Orphans' Court of his said guardianship. Several exceptions were taken by Hughes to the decisions of the Orphans' Court, which are now assigned as errors.

BOLLING & J. B. STONE, for plaintiff in error:
1. The evidence is not sufficient to charge Hughes with the $294 65-100, supposed to be in the hands of Measels, the former guardian, of the ward. There was no evidence but the pretended settlement of Measels. The record does not show such a decree against Measels, that Hughes could have enforced it by execution, (Willis v. Willis, 9 Ala. 721.) The pretended decree against Measels is void.—Ashley's Distributees v. Ashley's

Hughes v. Mitchell.

adm'r., 15 Ala. 17. It is not even *prima facie* evidence against Hughes, he being no party to it; and the court should have excluded it as evidence.—1 Stark Ev. 187, *et seq*. 1 Am. Ed. ib. 286; 16 Ala. 67 ; Williams & wife, v. Harrison at the present term.

2. The court could not charge him with the cost of former trials in which he had been successful in resisting the payment of the $294 65-100 and interest. It could at most, only charge him with the cost of the case before it.

3. The plaintiff in error should have had credit for the nett proceeds of the sale of the three slaves in Coosa, by the sheriff, and of all the sales of property. Mitchell could and ought to have collected the note on Mastin, which he received as cash from him. Mastin having purchased the three slaves sold in Coosa, and having given his note for the purchase money, by the consent of Mitchell, the guardian, makes Mitchell as responsible for the money, as though it was in his hands. It is no excuse that he has not collected the note ; Mastin could not retain the slaves, and resist the payment of the purchase money, (he has not yet accounted for one of them) and the two sold last were sold as his property, and not as the property of Hughes. In legal contemplation, he is in possession of all of them.—Ogburn v. Ogburn, 3 Por. 127 ; Harris v. McConnegeh, 18 Ala. R.

The subsequent sale of two of these slaves by the sheriff of Lowndes does not alter the case; for they were sold as the property of Mastin. This is shown by his having given a forthcoming bond when they were levied upon. Neither do the motions by Jno. L. Tomlinson to quash the several executions, and set aside the several sales, change the question. Hughes is not bound by the acts of Tomlinson, and the acts of the court on these motions amount to nothing. But admitting all this against plaintiff, so long as the slaves are withheld, he should have a credit for their value, or what they were sold for.

Should the court however, refuse to allow Hughes a credit for the two slaves last sold, he should at least have credit for the value of the one not accounted for, and also for the proceeds of the sales of the land.

4. Hughes was cited to settle his own accounts as guardian. He has settled for his own acts. The proceeding was not to make him liable for the balance in the hands of Measels, on his last settlement.

STONE & JUDGE, *contra:*

1. An administrator is chargeable with claims lost by his neglect. He is *prima-facie* liable for the debts due the intestate, which he did not return as desperate.—Brazeal v. Brazeal, 9 Ala. 491; Duffie v. Buchanan, 8. Ala. 27; Willis v. Willis, 16 Ala. 653.

2. The question of costs must be to a great extent, discretionary with the primary court; but if we are wrong in this, the court correctly decided that plaintiff in error must pay the costs incurred by his own unjust attempt to rid himself of that item. Jones v. Dyer, 16. Ala. 221.

3. All the executions and the sales under them, both of land and slaves, were set aside and quashed on the motion of plaintiff in error, and his securities. No money was ever paid under either of the purchases; and the evidences were cancelled. But even if the money had been paid, the party paying has the right to recover it back from the person who has the money: Hughes' property and rights of property are restored to him; and if he has not the possession, he can recover it. No rights have passed from him under the sales now set aside; and surely, he is not entitled to a credit for the sales.

4. If the decree against the former guardian was not in such form as to permit an execution to issue, it was the duty of Hughes to put it in proper form and collect it. No other person had the right to recover in the matter, and this court has several times recognized his right to do so.—McLeod v. Mason, 5 Por. 223; this case, 11 Ala. 563.

5. The order on the Orphans' Court minutes, ascertaining the amount due from Measels the former guardian, was sufficient to put Hughes on diligence to ascertain whether that sum was due, and to collect the same; and this is the more clear, as Hughes had been required to charge himself with the same as so much cash. If the account current of Measels did not warrant the informal decree, Hughes should have produced the account current, and shown that fact. If there had been no account current, or no authority for the decree, the plaintiff in error would have shown it.

DARGAN, C. J.—I cannot doubt but that the settlement made by William Measels as guardian of Flora Ann Ringstaff, as evinc-

ed by the orders of the Orphans' Court of Lowndes, is evidence as against him of a debt due to his ward. It is provided by statute, that the documents and evidence of all settlements made with executors, administrators, and guardians, shall be carefully preserved by the clerk of the County Court, and the settlement entered of record; which evidence, vouchers, documents and settlement shall be good evidence, in any suit for or against such executor, administrator or guardian, and shall not be impeached, unless for fraud in obtaining the same.—Clay's Dig. 304, § 37. It is under the influence of this act, that we have held that the final settlement of the accounts of executors and administrators, made in the Orphans' Court, showing the indebtedness of such executors or administrators, is conclusive alike upon them and their securities.—Williams v. Howell, 4 Ala. 693; Chilton v. Parke, 14 Ala. 671; Perkins v. Moore, 16 Ala. 9.

It is however argued that this final settlement as a judgment, would be considered void, because it is not rendered in favor of any one, and no execution could have issued upon it, for the amount ascertained to be due from Measels, the guardian, to his ward. This may be true; but we do not think the consequence follows, that the settlement is not evidence of an indebtedness from the guardian to the ward. The Orphans' Court had jurisdiction, and its orders show that the guardian entered into a final settlement, and he was found indebted $294 65-100. This is evidence of a debt due from him to his ward.

The next question that grows out of this branch of the case is, whether Hughes, who was appointed guardian of the ward in the stead of Measels, is chargeable with this debt, he never having taken any measures to collect it. We think it clear that a guardian who has notice of a debt due to his ward, should not, through mere negligence, suffer it to be lost. If he does, he should be charged with the amount.—Willis v. Willis, 16 Ala. 653; Brazeal v. Brazeal, 9 Ala. 491; Duffie v. Buchanan and wife, 8 Ala. 27. The evidence shows that Surles, one of the securities of Measels, was solvent, that he remained in the State for more than five years after Hughes was appointed guardian, and then removed from the country, whereby the debt is lost. Had measures been taken by Hughes during this time to collect the debt, it could have been done. But it has not been, and the loss is fairly attributable to his neglect, and he must bear the consequences.

It appears that two decrees have heretofore been rendered in this case, both of which have been reversed by this court, upon the first of which two executions were issued. One was delivered to the sheriff of Lowndes, the other to the sheriff of Coosa. The sheriff of Lowndes levied on certain lands as the property of Hughes, which he sold in June, 1845, and John L. Tomlinson became the purchaser bidding a sum sufficient to pay all the costs, and $78 98-100 of the principal. In Aug. 1847, a motion was made to quash the executions, and set aside the sale, which was granted. There is no evidence that the money was refunded to Tomlinson, or that he ever obtained possession of the land. The guardian, Hughes, asked to be allowed a credit to the amount of this sum, which was refused by the court, and he excepted. We think the court correctly refused this sum as a credit. It is clear that the execution being quashed, and the sale set aside, Hughes has not lost his title to the land. He therefore paid no part of this sum. The money belonged to Tomlinson, and Hughes cannot insist upon it as a payment by himself. But it is contended that it ought to have been allowed as a credit, for the reason that Tomlinson being the security of Hughes, who is now insolvent, it is but reasonable to presume that Mitchell has retained the money, because he had an equitable right to it. We will not discuss the right of Mitchell to retain it, nor the right of Tomlinson to demand it. The proceedings are against Hughes, he has no right to the money, and consequently cannot insist upon it as a payment by him, or as a credit to which he is entitled. This can be settled between Mitchell and Tomlinson, if ever Tomlinson is called upon to pay any more, if indeed it has not already been adjusted between them. Under the execution delivered to the sheriff of Coosa, three negroes were sold as the property of Hughes, for the sum of $540, which were purchased by William Mastin, who was also one of Hughes' securities; Mastin did not pay the money, but executed his note to Mitchell for the amount; afterwards this execution was quashed, and the sale was set aside, and Mastin and Mitchell agreed that the note given for the purchase money at sheriff's sale should be considered null and void, and it never has been collected; another execution issued upon the second decree, and two of these three negroes were sold under it for $478; they were levied upon in the possession of Mastin. It is not shown what became of the

third slave, and no other evidence was offered to show that it was lost to Hughes in consequence of the sale. The court allowed him a credit of $478, being the amount for which the two slaves were sold under the second decree, but refused to allow him a credit for the value of the other. As the execution upon the first decree, under which the slaves were sold, was quashed and the sale set aside, and Mastin never having paid the purchase money, it is manifest that the title of Hughes, even if it was divested by the sale, was restored to him, and in the absence of all proof to the contrary, it is but a reasonable presumption that he regained the possession of the slave, or at all events, that the value of the slave has not been lost to him. We cannot indulge in the presumption, that Hughes has never regained this slave, or its value, there being no proof what became of it. It is not therefore necessary to enter into an examination of the question, whether Hughes would have been entitled to a credit for this slave or its value, if it had been shown that, by the sale which was set aside, the slave was lost to him. We think the court ruled correctly, in allowing him a credit for the amount the two slaves bought at the second sale, and refusing him a credit for the value of the third.

In regard to the cost that has accrued in consequence of the litigation of the item of $294 65-100, we think the court correctly charged them against Hughes. The controversy grew out of his failure to collect this sum from Measels and his securities, it therefore grew out of his neglect, and he was properly charged with the debt. We can see no reason why the estate of the ward should bear the expense of litigation which grows out of the neglect, and improper conduct of the guardian, especially when he is unsuccessful, and is charged with the sum in reference to which the litigation arose. As the ward is entitled to recover this sum against him, and the litigation was improper on his part in denying his liability, he was not charged with the costs improperly.—Jones, adm'r. v. Dyer and wife, 16 Ala. 221.

Upon the whole, we can discover no error in the decree, and it must be affirmed.