RESSIE SMITH *v.* W. A. B. CARTRIGHT, *Guardian, et al.*

(No. 7427)

Submitted March 1, 1933.   Decided April 4, 1933.

*J. M. N. Downes* and *Lycurgus Hyre*, for appellants.
*N. Van Wilson,* for appellees.

KENNA, JUDGE:

This suit was brought in the circuit court of Braxton County by Ressie Smith against W. A. B. Cartright, guardian, the United States Fidelity & Guaranty Company as surety on the bond of the guardian, Clarence Smith, Esker Smith, Lida Smith, Carr Smith, James Smith, Emil Smith, Robert Smith and Maude Smith.   Its purpose was to require an accounting from Cartright, guardian, who was appointed guardian of

the plaintiff and Clarence, Esker, Lida, Carr, James, Emil, Robert and Maude Smith by the clerk of the county court of Braxton county in vacation on the 23rd day of April, 1915, and on that day qualified and gave bond. The lower court granted the relief prayed for in the bill of complaint, and from its decree to that effect, entered on the 23rd day of December, 1931, the defendants, W. A. B. Cartright, Guardian, and United States Fidelity & Guaranty Company, a corporation, prosecute this appeal.

J. D. Smith died on October 20, 1913. Surviving him were seven children by a first wife, then dead, and nine children by his wife, Ollie Smith, who survived him. We are not here concerned with the first set of children. The second set of nine children were all infants at the time of the death of their father. On January 7, 1914, a chancery suit was brought for the purpose of procuring partition or sale of certain real estate situate in Braxton county of which J. D. Smith had died seized. The widow and both sets of children were parties to this proceeding. In the course of this litigation, the interests of the heirs of J. D. Smith were fixed by decree, and on November 28, 1914, a decree was entered ordering sale of the land and appointing one C. F. Greene, special commissioner, to carry out the decree. The land was sold March 15, 1915, the coal, sold separately, bringing $505.00, represented by three notes in equal payments in one, two and three years. The surface and other mineral brought $1400.00, payable on the same terms. On April 23, 1915, Cartright was appointed guardian for the nine infant children by the second marriage. Skidmore and Bright were his sureties in a bond conditioned in the penalty of $1,000.00. On April 4, 1916, this bond was increased by the county court to $1,500.00, and United States Fidelity & Guaranty Company, a corporation, became surety in lieu of the individual surety. On May 7, 1918, C. F. Greene executed deeds to the separate purchasers of the coal and of the surface and other minerals. The decree of his appointment had instructed him to retain the legal title until all the purchase money notes had been paid. The consideration recited in each of the deeds he made was one dollar cash in hand and other valuable considerations. C. F. Greene died in November, 1918. On November 22, 1918, Alex Dulin was appointed

special commissioner to collect the balance of the purchase money and to execute deeds. There is no ascertainment of the amount of the unpaid purchase money in this decree. The estate of C. F. Greene was settled by an accounting before W. L. Armstrong, commissioner of accounts, on November 24, 1919. According to the settlement, the estate was solvent. The commissioner of accounts reported on August 15, 1921. On May 13, 1922, Dulin died without having reported pursuant to his appointment as special commissioner. In October, 1922, a bill of complaint was filed in the case of Cary T. Hines, administrator of the estate of C. F. Greene, against Margaret Ellen Greene and others in the circuit court of Braxton county. The purpose of this suit was to wind up the affairs of C. F. Greene. On August 14, 1928, the defendant Cartright laid his accounts as guardian before W. L. Armstrong, commissioner of accounts of Braxton county. Apparently, this account has never been completed, and, at the date of the bringing of the instant suit, there had been no report by the commissioner of accounts made. This suit was brought August 2, 1929.

In his answer Cartright admits the receipt of $400.00 in his capacity as guardian, denies that he has received any money other than that sum, and justifies his conduct with the averment that the infants became scattered and he could not locate them for the purpose of making settlement with them, and by averments tending to show the difficulty in detail of working out the affairs of their estate. He denies any obligation or liability whatsoever as does his surety, United States Fidelity & Guaranty Company, which joins in the answer.

We think the bill of complaint is sufficient to require of the defendant guardian an accounting of his stewardship. True, it is not drawn so that the detail of its averment fits the case as it was developed before the commissioner. Yet it sufficiently avers the jurisdictional facts, the dereliction and negligence of the guardian, the absence of an accounting before a commissioner of accounts since the date of his appointment in 1916, and is sufficient to inform the guardian and his surety as to what would be required of them as defendants. Accounting is peculiarly a matter of equity jurisdiction. The demurrer could not have been sustained.

The second assignment of error complains that the other brothers and sisters of the plaintiff were made parties defendant and their claims allowed. There was no prejudice in this either to the guardian or his surety.

The third assignment of error complains that Robert Smith, one of the brothers to the plaintiff, was not made party defendant. It is said that he was dead at the time the suit was brought and that the defect of not having him before the court should be matter of reversal. He died intestate and unmarried and all the persons who would receive as heirs at law or distributees under him were before the court. There is no prejudice in this. See *Bank* v. *Ralphsnyder*, 113 W. Va. 480, 169 S. E. 89, point 4, and at page 6 of the original opinion.

The fourth assignment of error to the effect that the attorney for plaintiff waived or accepted service for a number of the defendants has no virtue. Their interests were the same. The same attorney might well have represented all of them, and his authority to do what he did, in the absence of proof to the contrary, which is not directly present, will be presumed.

The fifth assignment of error complaining about the cost of the reference is not well taken. It was within the discretion of the trial court.

The sixth assignment of error raises a question of title that was disposed of in the case of Solomon Smith v. W. R. Smith. It could not be litigated again in this case.

The seventh assignment of error relating to details of facts involved in the commissioner's finding cannot be taken up by us here. The report was examined and confirmed by the trial court. There is nothing in this record to show that either the trial court or the commissioner was clearly wrong in his findings of fact. The question of compound interest, however, will be disposed of later.

The ninth, tenth and eleventh assignments deal with questions of fact. These we do not disturb because there is nothing in this record to show that they are clearly wrong. Both the commissioner and the trial judge affirmed them.

The principles of this case appear to us to be well settled by the case of *Roush* v. *Griffith*, 65 W. Va. 752, 65 S. E. 168, and by *Hescht* v. *Calvert*, 32 W. Va. 215, 9 S. E. 87. There is nothing in this record that impeaches the personal integrity

of this guardian. On the other hand, the record shows distinctly that he failed to perform plain duties imposed upon him by law to the damage of the estates of his wards. The decree of the circuit court of Braxton county had established the fact that they were entitled to interests in the land of which their father died seized and possessed. C. F. Greene was appointed in the proceeding to sell this land as special commissioner, which he did. The legal title was to be retained until the purchase money for the land was paid in full. Greene afterwards made deeds. Certainly, this money should have been collected and disbursed by Greene. His estate was permitted to be settled, apparently without claims having been presented by the guardian for the amounts due to his wards. The Greene estate was solvent. In addition, Greene, as special commissioner, was under bond. If Greene had not collected the money from the purchasers, at the time he made the deeds, then the purchasers should have been pursued or a recovery sought on the bond of Greene as special commissioner. In short, according to the record, the guardian had many opportunities, by the pursuit of which he could have realized the sums of money due to his wards. None of these were taken advantage of. It was the duty of the guardian to be diligent in the collection of sums due to his wards. We think there was ample justification for a decree against the guardian for his failure, the consequences of which were readily calculable. We find no fault with the calculation.

Under the provisions of section 10, chapter 82, Code 1923, which is section 10, article 10, chapter 44, Official Code of 1931, the court below has correctly added the interest to the principal column at the end of each year during the continuance of the guardianship and the dereliction of the guardian. At the end of the guardianship the court, again correctly, has ceased compounding this interest by the method above referred to and has added simple interest upon the aggregate from that time forward. Neither the guardian nor his surety can complain of this.

Finding, therefore, that there is no prejudicial error in the decree, it is affirmed.

*Affirmed.*