154 So. 781

## DUMAS et al. v. HOLLINS.
## 2 Div. 41.

Supreme Court of Alabama.
April 12, 1934.

Rehearing Denied May 31, 1934.

Bonner & Bonner, of Camden, for appellee.

P. E. Jones, of Camden, and Ball & Ball, of Montgomery, for appellants.

KNIGHT, Justice.

The record discloses that the present appeal was taken by O. D. Dumas, as guardian of Annie Hollins, a non compos mentis, National Surety Company, and the National Surety Corporation, "separately and several-ly," from a decree of the probate court of Wilcox county against the said O. D. Dumas as such guardian, and in favor of his said ward for the sum of $6,577.59.

Errors are here separately assigned by each of the three named appellants.

On October 9, 1933, said O. D. Dumas filed his account and vouchers, and petition for a final settlement of his guardianship.

The court appointed a day for the settlement, and, observing the requirements of section 8209, Code, as amended by an act of the Legislature of 1931, Acts 1931, p. 829, directed notice to be given to the National Surety Company, surety on the guardian's bond, by service of citation on it. This notice was given, and the National Surety Company thereafter duly appeared, and filed exceptions and objections to the account of the guardian. The grounds of its objections and exceptions were: That the said Dumas, as such guardian, had not, in fact, received the money, or any part of it, that he admitted receiving by his account, and that the amount of money he charged himself with having received was "based upon nothing but book entries without receipt by said Dumas as such guardian of said money or any part thereof."

It also appears that the National Surety Corporation filed objections and exceptions to the account filed by the guardian. In addition to filing the same objections presented by the National Surety Company, the National Surety Corporation also filed the following other objections and exceptions: "It was not a surety on the bond of said O. D. Dumas as such guardian at the time of any loss to said ward"; and, "It has never assumed any liability for any loss for which said National Surety Company might be liable as surety on the bond of said Dumas as such guardian prior to May 1st, 1933."

As connecting the National Surety Corporation with the guardianship of the said Dumas, the plaintiff, over objection and exception of both the National Surety Company and the National Surety Corporation, the guardian ad litem of the ward, Annie Hollins, introduced in evidence an instrument in words as follows:

"Assumption of Liability Certificate.

"To be attached to bond No. 4020465, executed by National Surety Company effective on or about the 18th day of December, 1931, on behalf of O. D. Dumas, guardian in the amount of thirteen thousand one hundred ($13,100.00) dollars, covering estate of Annie Hollins, N. C. M. filed in Prob. Ct. Wilcox Co. Ala.

"This certifies that, for a valuable consideration, National Surety Corporation has assumed liability for losses arising from or caused by acts committed on and after May 1st, 1933 under the above designated bond of National Surety Company; provided, however, that the liability assumed by National Surety Corporation under the bond of National Surety Company shall be deemed and held to be decreased by the aggregate amount of losses arising from or caused by acts committed prior to May 1st, 1933.

."In witness whereof, the corporation has caused this instrument to be signed by its president, attested by its secretary and countersigned by its authorized representative this 20th day of May, 1933.

"National Surety Corporation

"By E. M. Allen, President.

"Attest: Hubert J. Hewitt, Secretary.

"Countersigned by A. H. Kean, Attorney-in-Fact.

"Countersigned at Montgomery, Ala. Leslie W. Porter, Authorized Representative."

██ We entertain no doubt of the right of the National Surety Company to appear on the settlement and protect itself from the faithlessness or want of diligence of its principal in making defense against any judgment that might be rendered in the cause.

Section 8212, so far as here pertinent, provides: "And all final decrees rendered against a guardian, or against the personal representative of the guardian, on a final settlement, have the force and effect of a judgment at law, on which execution may issue against the guardian, or his personal representative, and against the sureties of the guardian." And for all practical purposes, such a decree may be read as if the sureties were named in the decree in the first instance, along with the guardian.

"Whether the settlement is made and the decree rendered in the Court of Probate, or in the Court of Chancery, there is no doubt, if good reason was shown, either court would permit the surety to intervene pro interesse suo, and protect himself from the faithlessness, or want of diligence of his principal in making defense." Hailey v. Boyd's Adm'r, 64 Ala. 399; Baines v. Barnes, 64 Ala. 375; Bean v. Harrison, 213 Ala. 33, 104 So. 244; Ex parte Chapman, 225 Ala. 168, 142 So. 540.

It will be here noted also that section 8209 of the Code has been amended to require the court to give ten days' notice of the day appointed for the hearing of the guardianship settlement to all sureties on the bond of such guardian by the service of citation on them. Thus, by statute, the sureties are made parties to such settlement, with the right to appear, and, if the statute means anything, with the right to defend against any decree being rendered against their principal, or to see that the decree shall only be rendered for a proper amount.

It is first insisted that the court rendered no decree in the case; that what purports to be a decree is wholly insufficient as an adjudication. If appellants' contention in this regard is correct, this court would be without jurisdiction, and the only order that it could make would be one of dismissal. Alston v. Marengo County Board of Education et al., 224 Ala. 676, 141 So. 658; Martin v. Alabama Power Co., 208 Ala. 212, 94 So. 76.

However, we are fully persuaded that the decree rendered by the probate court in the cause clearly shows an adjudication by the court, and is not subject to appellants' criticism.

The evidence in the record shows that Annie Hollins was and is a non compos mentis, and that the probate court of Wilcox county had jurisdiction of her person and of her estate. That O. Dumas, the father of appellant Dumas, was the first guardian of Miss Hollins; that C. P. Dumas, a brother, was the second guardian; and that upon the death of his said brother, the appellant O. D. Dumas was duly appointed the guardian of Miss Hollins, and qualified as such with the National Surety Company as his only surety.

It is without dispute in the evidence that large sums of money came into the hands of O. Dumas and of C. P. Dumas as guardians of Miss Hollins during the time they were such guardians, and that this money was, without authority of any court, loaned by them to Dumas Grocery Company, which was incorporated in 1906. The stockholders were the said O. Dumas, C. P. Dumas, Joel Dumas, and O. D. Dumas, one of the appellants; and these parties were the directors and officers of said corporation.

It further appears that at the time O. D. Dumas was appointed guardian of Miss Hollins, he was the president of said corporation, and that the corporation owed Miss Hollins the sum of $6,550.04.

Upon his appointment as guardian, Mamie C. Dumas, the executrix of the will of C. P. Dumas (the former guardian), made a settlement of the C. P. Dumas guardianship with the appellant O. D. Dumas, and gave him a draft on the Dumas Grocery Company for $6,550.04. This draft was dated January 6, 1932, and represented the full amount due by C. P. Dumas, late guardian to Miss Hollins. When the draft was delivered to O. D. Dumas, as guardian, the latter executed to Mrs. Mamie C. Dumas, as executrix of C. P. Dumas' will, his receipt therefor. In this connection the said O. D. Dumas testified: "The only way that receipt was paid was by the draft in evidence dated January 6, 1932, and when I got that draft I drew a check in the name of Dumas Grocery Company to pay it. I delivered that check to the cashier of Dumas Grocery Company and he deposited it in the First National Bank of Mobile. I did not get any money on the check. It was credited on the Dumas Grocery Company books to me as guardian. That is the only mode of payment that was ever made of this draft."

O. D. Dumas further testified that he made no effort to get into his actual possession the money belonging to the estate of his ward, and that when he was appointed the money was available if he had called for it in cash.

It was agreed "that the ledger sheet of the First National Bank of Mobile, showing the account of Dumas Grocery Company, showed that on January 8, 1932, a check for $6,550.04 was charged on the account of Dumas Grocery Company and on same day said account was credited with the same amount."

It further appears that at the time the draft was given to O. D. Dumas, and at the time he drew the check on the First National Bank of Mobile for $6,550.04 in payment of the draft, the Dumas Grocery Company was solvent, but that the Dumas Grocery Company was adjudicated a bankrupt on June 20, 1933.

From the undisputed evidence in the cause, it appears that the appellant O. D. Dumas, as guardian of Miss Hollins, either received payment of the $6,550.04, or that he could, by any sort of effort, have secured the money from the Dumas Grocery Company 'long prior to its bankruptcy.

That the guardian is chargeable with any property, whether principal or interest, which he could have received by the use of reasonable diligence, is well established. 12 R. C. L. p. 1155, § 47; Nelson v. Cowling, 77 Ark. 351, 91 S. W. 773, 113 Am. St. Rep. 155; McLean v. Hosea, 14 Ala. 194, 48 Am. Dec. 94.

If the guardian allowed his ward's fund to remain in the possession of the Dumas Grocery Company—a concern of which he was president and a stockholder—when he could have collected it, he violated a plain duty, involving a devastavit, and for which he and his surety would be liable. May v. Duke, 61 Ala. 53; Robinson v. Pebworth, 71 Ala. 240; Leach v. Gray, 201 Ala. 47, 77 So.

341, 7 A. L. R. 890; Lee v. Lee, 55 Ala. 590; Cunningham v. Cunningham, 215 Ala. 484, 111 So. 208.

The uncontradicted evidence in the case entitled Miss Hollins, the ward, to a decree for the amount allowed by the court. Whether the said Dumas Grocery Company was solvent, or insolvent, on May 1, 1933, was immaterial to any issue properly before the court on this appeal. With the evidence in or out, the result would be the same.

The view we have taken of the case, and of the evidence, renders it unnecessary to consider the few other questions presented.

It follows that the decree of the probate court is due to be, and accordingly is, here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.