3 So.2d 129

### COX v. WILLIAMS.

4 Div. 141.

Supreme Court of Alabama.

April 10, 1941.

Rehearing Denied June 5, 1941.

Further Rehearing Denied June 26, 1941.

Meader, Jones & Murray, of Montgomery, for appellant.

Rushton & Rushton, of Montgomery, for appellee.

LIVINGSTON, Justice.

This appeal is from a decree rendered by the Circuit Court, in Equity, of Russell County, Alabama, on the final settlement of S. D. Williams, as guardian of James Swain, a non compos mentis.

The following pertinent facts are necessary to an understanding of the issues involved: On September 15, 1924, Pal M. Daniel, the then sheriff of Russell County, Alabama, was appointed by the probate court of said county as guardian of the estate of James Swain, a non compos mentis, and veteran of the United States Army. The appointment was by virtue of his office of sheriff, and the guardianship attached to that office and the sheriff's official bond serving as a guardian's bond.

The bond was in the amount of $5,000, signed by eleven individuals as sureties. On August 18, 1925, an additional official bond in the sum of $5,000 was posted by Pal M. Daniel with nineteen individuals as sureties, some of whom were on the original bond. Pal M. Daniel's term of office as sheriff expired in January 1927. On January 17, 1927, Pal M. Daniel executed a bond in the sum of $3,000, as guardian of the estate of James Swain, with G. W. Martin, R. C. Prather and W. G. Dupree as sureties. On this date no new letters of guardianship were issued, no settlement had, and no discharge of the former bonds or sureties appear.

S. B. Williams, the appellee, was appointed guardian of the estate of James Swain on August 30, 1929. On October 20, 1930, Pal M. Daniel filed his report for a final settlement as guardian of the estate of James Swain, and a hearing thereof was set for November 20, 1930. On December 9, 1930, on final settlement of the guardianship of Pal M. Daniel, the probate court entered a judgment, in part, as follows: "It is therefore ordered, adjudged and decreed that of said guardian, the said P. M. Daniel, that the said James Swain, non compos mentis, have and recover the sum of $4,489.66, for which (let) execution issue against the said P. M. Daniel as such guardian and against the sureties on the bond of the said P. M. Daniel as such guardian, and that as to such executions to be issued thereon and as against this judgment there are no exemptions of personal property." This judgment was not recorded in the office of the judge of probate of Russell County, Alabama, until May 8, 1937, nor was execution issued on said judgment until May 8, 1937.

On May 4, 1938, the matter of the estate of James Swain, a non compos mentis, was removed from the probate court to the Circuit Court, in Equity, of Russell County, Alabama.

S. B. Williams, the appellee, resigned as guardian of the estate of James Swain on September 13, 1939. His resignation was accepted and recorded, and letters of guardianship revoked September 18, 1939, and on the same day letters of guardianship of the estate of James Swain were granted to Roy R. Cox, the appellant. The petition for final settlement and discharge of S. B. Williams, as guardian, was heard October 30, 1939.

The sole controverted question on the final settlement of Williams, and the only question here presented, is whether or not Williams should be charged with the amount of the judgment rendered against his predecessor in office, Pal M. Daniel, and the sureties on his bond on account of his (Williams) failure to collect that judgment. Pal M. Daniel died in December, 1933, and so far as appears from the record without assets. No action having been taken against the sureties on the bond or bonds of Daniel within six years from the rendition of the judgment against him, all actions against the sureties were barred. Section 8944, Code of 1923, Code 1940, Tit. 7, § 21; Martin v. Tally, 72 Ala. 23.

Section 8212, Code of 1923, Code 1940, Tit. 21, § 142, so far as here pertinent, provides: "And all final decrees rendered against a guardian, or against the personal representative of the guardian, on a final settlement, have the force and effect of a judgment at law, on which execution may issue against the guardian, or his personal representative, and against the sureties of the guardian." And, for all practical purposes, such a decree may be read as if the sureties were named in the decree in the first instance along with the guardian.

It will be here noted that the notice to sureties on final settlement of a guardian, as now required by section 8209, Code of 1923, as amended, was not required at the time Pal M. Daniel made a final settlement on December 9, 1930. This requirement was the subject of an amendment to section 8209, Code, by the General Acts of 1931, page 829, Code 1940, Tit. 21, § 136.

■ When the sheriff is appointed guardian of a non compos mentis by virtue of his office as sheriff, he and the sureties on his official bond become bound in all respects so long as the guardianship continues, even though the term of office as sheriff expires. Pearce v. Hall, 113 Ala. 245, 21 So. 250; 57 Corpus Juris 1018, section 809. Nor are sureties on a general guardianship bond discharged from liability already incurred by the guardian giving an additional, new or special bond, with other or different sureties. Lee v. Lee, 67 Ala. 406; 28 Corpus Juris 1300, section 505.

■ It therefore follows that the decree rendered against Daniel on December, 9, 1930, had the force and effect of a judgment at law, and on which execution

could have issued against the sureties on any or all of the three bonds set forth in the record. State v. Page, 63 Ind. 209; State v. Drury, 36 Mo. 281; 23 Corpus Juris 1300, note 89; section 8140, Code of 1923, Code 1940, Tit. 21, § 32.

The general rule is that there is a presumption that an officer has performed a duty required by law, and which his records show was performed. Wiley v. Wilhite, 201 Ala. 638, 79 So. 110; Barry v. Stephens, 176 Ala. 93, 57 So. 467; Gamble v. Andrews, 187 Ala. 302, 65 So. 525; Grayson v. Schwab, 235 Ala. 398, 179 So. 377; Walton v. City of Mobile, 232 Ala. 200, 167 So. 247.

Since Daniel, the previous guardian, had given bond with surety approved by the judge of probate for the faithful performance of his duties, it is presumed prima facie that the sureties on his bond had assets equal to the amount of the bond, and that the claim against him in his capacity as guardian was collectable by the use of due diligence. Roush v. Griffith, 65 W.Va. 752, 65 S.E. 168; Smith v. Cartright, 113 W.Va. 554, 169 S.E. 72.

It is the positive duty of the guardian to collect the assets of his ward, to reduce to possession choses in action, and to collect debts due the estate of his ward. 28 Corpus Juris 1130, section 215; Mason v. Buchanan, 62 Ala. 110; Smith v. Cartright, 113 W.Va. 554, 169 S.E. 72; Spann v. First National Bank, Ala.Sup., 200 So. 554. And a guardian having notice of a debt due the estate of his ward is liable on final settlement for the loss of such debt through his negligence, and which could have been collected had he used due diligence. 28 Corpus Juris 1132, section 218; Stewart v. McMurray, 82 Ala. 269, 3 So. 47; Lane v. Mickle, 46 Ala. 600; Hughes v. Mitchell, 19 Ala. 268; McLean v. Hosea, 14 Ala. 194, 48 Am. Dec. 94; 12 R.C.L. p. 1155; Dumas v. Hollins, 228 Ala. 644, 154 So. 781; Roush v. Griffith, 65 W.Va. 752, 65 S.E. 168; Kelly v. Wilson, 234 Ala. 455, 175 So. 551, 552; Hines v. Dollar, 236 Ala. 329, 181 So. 748.

Being a trustee, a guardian must give his personal attention and care to the management of his ward's estate, and is bound to exercise such diligence and prudence as reasonably prudent men ordinarily employ in the conduct of their own affairs, and his failure to so act is negligence, and he will be held liable for losses resulting therefrom. 28 Corpus Juris 1129, section 213; Lee v. Lee, 67 Ala. 406; Scott v. Reeves, 131 Ala. 612, 31 So. 453, 454; McLean v. Hosea, 14 Ala. 194, 48 Am.Dec. 94.

In the light of the foregoing authorities, we have carefully examined the record in this cause, and while no attempt is made to set forth all the evidence, the following pertinent facts appear: the judgment against Daniel on final settlement of his guardianship of James Swain, a non compos mentis, was rendered on December 9, 1930. At or near this time, the appellee qualified as guardian of the estate of James Swain. This judgment was not recorded, nor was execution issued thereon for a period of more than six years, although appellee was present when Daniel made his final settlement and knew of the existence of the judgment since the time of its rendition. As to the sureties on the bonds of Daniel, all actions on this judgment are barred by the statute of limitations of six years (section 8944, Code of 1923, Code 1940, Tit. 7, § 21). Daniel died in December 1933, without assets.

Appellee testified that he was not an attorney, that he employed an attorney and instructed him to record the judgment and to collect it. That his attorney advised him that the judgment was recorded. That he (appellee) on several occasions talked to the judge of probate, and asked that execution be issued on the judgment, which request the judge of probate refused. That his attorney advised him to the effect that it was doubtful whether or not he could get execution issued without the aid of an attorney living outside of Russell County, and that he talked to attorneys living outside the county, but never employed any of them. The attorney for appellee testified that he gave the judgment to a clerk in the office of the judge of probate, and thought that it was recorded. That he tried to get execution issued, but without success. And, further, that he advised appellee to get other attorneys, someone living outside Russell County. That on several occasions he asked the judge of probate to issue execution on the judgment, and various excuses were given for not doing so; that the judge of probate refused to sign the execution he prepared. That execution was finally issued, but only after the statute

of limitations of six years had run against the sureties. That he was mistaken in thinking that the statute of limitations was ten years instead of six years. That he talked of having issued a writ of mandamus compelling the judge of probate to issue execution, but never did apply for such writ.

Touching the question of appellee's negligence in handling the estate of his ward, appellant introduced in evidence correspondence between appellee and the Veterans Administration; and we here set out a part of that correspondence. On March 31, 1932, appellee wrote to H. G. McCrutchen, regional attorney for the Veterans Administration, that "it is my understanding that the property owned by parties on his bond was made over to their wives sometime ago." In reply, on April 9, 1932, the Veterans Administration advised appellee that "I would further suggest that the matter of collecting the judgment be placed in the hands of one of your competent reliable attorneys who can be depended upon to force the matter of collecting the same to an early conclusion." On August 18, 1934, acting chief attorney for the Veterans Administration wrote appellee, in part, as follows: "There is some information of record indicating that the sureties on the former guardian's bond were probably worth the amount of their liability at the time the shortage occurred in the guardian's account, but that those sureties may have disposed of all of their tangible assets in an effort to defeat their liability. Whether that has been done or not, it is your duty as the succeeding guardian to exhaust all legal remedies in an effort to collect the assets of your ward. If the sureties hold assets subject to execution, you should instruct the court to issue a writ of execution against them, as well as the former guardian. If the sureties have disposed of their holdings, as indicated, you should instruct your attorney to proceed against them in an effort to set aside the sale of any holdings, which sale might have been made for the purpose of defeating their liability under the bond. Should it develop that the sureties were not of sufficient financial worth to protect the estate of the ward at the time the bond was approved, you should instruct your attorney to inquire into the extent of the liability of the judge of probate for failure to require sufficient bond." On September 1, 1934, the Veterans Administra-

tion further wrote appellee: "It is desired to suggest, in addition to the suggestions contained in that letter (August 18, 1934) that you arrange to have the judgment recorded, if you have not already done so, as a means of further protecting the ward." On September 5, 1934, appellee advised the Veterans Administration that "the judgment has been recorded, but I see no way of effecting any further payments"; and on September 14, 1936, the chief attorney for the Veterans Administration wrote appellee as follows:

"Tuscaloosa, Alabama,
"September 14, 1936.
"In Reply tp: 1D9
"Swain, James C 300 501
"Mr. S. B. Williams,
"Hurtsboro, Alabama.
"Dear Sir:
"In your letter of September 5, 1934, you stated that your attorney and the judge of probate had advised you that the sureties on the bond of the former guardian of James Swain were worthless so far as the collection of the judgment against them was concerned. You stated further, however, that the judgment had been placed of record.

"We have just caused an investigation as to the worth of these sureties to be made with the result that we find the sureties to assess for tax purposes, without any recorded encumbrances the following property:

"Dr. R. C. Prather, Russell County, Alabama:

"Lot 14 block 218, three room house
"Lot 14 block 262, four room house
"Lot 6 block not stated, one house.

"He also assessed household goods $170.00
"Store stock                    1000.00
"Miscellaneous                   280.00.

"It was learned that Dr. Prather is owner and proprietor of the Central Drug Store, 326 Sixth Street, Girard, Alabama.

"It was also found that on August 5, 1931, Dr. Prather executed a deed purporting to convey title to a house and lot in the Girard section of Phenix City being parts of lots 206 and 207, fronting on Broad Street and running square 175 feet, the deed having been recorded April 5, 1934, in deed book 1, page 533, this conveyance being made to Effie H. Prather, apparently the wife of R. C. Prather.

"As to the George W. Martin property, Russell County, Alabama, there is listed as follows:

"105 acres (S. 10 T.  5 R. 29) $ 700.00
"137 acres (S.  2 T. 15 R. 29) and
"113 acres (S.  3 T. 15 R. 29) $1400.00.

"He did not assess any personal property above exemption.

"As to W. G. Dupree, no property was found which might be considered subject to execution.

"From the foregoing information, it is apparent that at least a major portion of the judgment can be collected through a writ of execution and it is respectfully requested and urged that you follow the matter up by requesting the court to place in the hands of the sheriff a writ of execution and that the sheriff be furnished with the foregoing information as to property subject to levy.

"As you have been previously informed, it is a part of your duty as the succeeding guardian to exhaust all available means of collecting the assets of the ward.  If for any reason you were mistaken with reference to the judgment having been recorded, you should take the indicated corrected action immediately in order to avoid possibility of the ward's losing his rights to subject the property of these judgment creditors to execution.

"Very truly yours,
"(Signed)  J.  B.  Davis
"J.  B.  Davis
"Chief Attorney."

Mr. Kelly, assistant chief attorney in the Alabama office of the Veterans Administration, testified, in substance:  my first acquaintance with Mr. Williams (appellee) was on August 24, 1932.  On that date, Mr. Ferrell, appellee's attorney said it was his belief that it would be necessary to employ an attorney from out of the county, and that he discussed with appellee the recommendation of Mr. Ferrell, and that later on close to the expiration of the statute of limitations, he (Kelly) recommended that appellee secure outside help.

We will not attempt to set out the voluminous evidence touching the financial responsibility of the sureties on the bonds of P. M. Daniel; but we have carefully examined all the evidence relative to this feature of the case, and are convinced that had due diligence been exercised the judgment against P. ·M. Daniel could have been collected from the sureties on his bonds.

Upon settlement, when a guardian claims a credit for assets not reduced to possession, and exception is filed to the allowance of the credit, the burden is on the guardian to prove the justness of his claim.  He must show that he employed due diligence to collect the demand for the loss of which he claims credit, or he must show that diligence could have accomplished nothing.  Stewart v. McMurray, 82 Ala. 269, 3 So. 47.

The appellee's duty was limited to the exercise of due diligence in the light of the particular circumstances surrounding the administration of this trust. What ordinary prudence would demand under these circumstances this appellee must do, and need do no more.  Upon his qualification as guardian, his first duty was to secure possession of all assets of the estate of his ward.  This duty is not absolute, but is a duty to exercise due diligence in that regard.  ·While a guardian may not delegate his authority and duties to others, he must frequently act through agents or attorneys.  This is not a delegation of his powers, for the guardian remains responsible for the reasonable diligence of his agent or attorney.  He must select his agents or attorney with reasonable care, and he must supervise their acts with the same degree of care.  Donaldson v. Allen, 182 Mo. 626, 650, 81 S.W. 1151; McClure .v. Middletown Trust Co., 95 Conn. 148, 110 A. 838.  Whether in a given case the guardian will be justified in intrusting a specific part of the administration of the trust to an agent must depend upon whether such act would be the act of a reasonably prudent person in a similar situation.  The necessities of the trust may require the services of an agent on account of the special expert knowledge required.  This is especially true in a case such as this, where the question of liability of the sureties and their ability to pay, depended upon a careful investigation by a competent attorney of a difficult legal problem.

No question is here raised as to the diligence of appellee in the selection of his attorney to represent him.  But reasonable diligence on the part of the guardian required him to know generally what the attorney was doing in the carrying out of the duties he was employed to perform.  He could not commit the cause to

434

the attorney and relieve himself of further supervision. In a general way he should know what steps the attorney was taking and should use due care to have him fulfill his employment. Subject to such supervision he might leave to his attorney the investigation of the matters involved, the decision of what steps to take, and then the taking of these steps. Investigation, decision and action, he might leave to his attorney, but in so doing the guardian became responsible for his reasonable diligence, his decision became the guardian's decision, his acts the guardian's acts, and his neglect the guardian's neglect.

In failing to record the judgment against Daniel before the statute of limitations ran against the sureties on his bond, and in failing to have execution issued thereon in the same period of time, even though it might have required a writ of mandamus to the judge of probate, the attorney, so far as appears, did not perform the duties committed to him. Reasonable diligence required that he do these things. The appellee is charged with his failure. The attorney's negligence is the negligence of the guardian.

In addition, the guardian himself was guilty of negligence in not following the advice of his attorney and that of the Veterans Administration to secure the aid of counsel outside of Russell County. Appellee's own testimony reveals a situation which, if true, put appellee on notice that his ward's affairs were not receiving, and were not likely to receive, the attention due them. With this information before him, appellee failed to act to protect the interest of his ward.

The record discloses that appellee is a man of wide experience and good business judgment: that he has been cashier of a bank in Russell County since 1917.

We are convinced from the record that had appellee used the diligence required of him under the law, the judgment against Daniel and his sureties could have been collected, and that the amount then due on the judgment should have been charged to appellee on his final settlement. In reaching our decision, we are not unmindful of the rule that where the testimony is heard ore tenus in the court below, the decision of that court will not be disturbed unless palpably erroneous.

This cause is reversed and remanded in order that the lower court may enter a judgment in accordance with the views herein expressed.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.

### On Rehearing.

LIVINGSTON, Justice.

The matter of calculating the amount due by appellee on final settlement on account of the judgment which he failed to collect was not argued on submission or rehearing. That matter should have our attention for the guidance of the lower court.

The judgment against Pal M. Daniel was entered on December 9, 1930, for the sum of $4,489.66. The sum of $685 was paid on that judgment to appellee. If properly accounted for on final settlement, the judgment should of course be credited with that amount. Appellee should be allowed credit for attorneys' fees paid by him for legal advice relative to the collection of the judgment.

The further question is: Should appellee be charged with interest from the date of the rendition of the judgment against Daniel, or should he be charged as for funds in his hands which he failed to invest? Holding, as we do, appellee to strict accountability for the collection of the judgment against Daniel and his sureties, we feel that, in equity and good conscience, he should be chargeable as of the date of the judgment as for funds of his ward in his hands which he failed to invest. The duty in this regard is indicated by section 8149, Code of 1923, Code 1940, Tit. 21, § 42, and cases there cited.

There is nothing in this record upon which to base a finding relative to the duty imposed by section 8149, supra. That matter, of necessity, will have to be determined by the lower court.

Application for rehearing overruled.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.