The jury awarded the plaintiff, John B. Calhoun, $56,812.22 in his action against J.C. Bradford and Company. The court remitted the award to $52,807.88 and entered a judgment in that amount. The defendant appeals; the plaintiff cross-appeals, challenging the remittitur.
John B. Calhoun invested funds belonging to his son, William B. Calhoun, with J.C. Bradford and Company, following the settlement of a lawsuit involving an automobile accident wherein William was injured. Because William was a minor at the time of the settlement, John Calhoun, as his guardian, invested $45,000 of the settlement sum, which totaled $60,000. He contends that he sought the advice of Tom Fowler, who was working for J.C. Bradford at the time, and that Fowler recommended investment of the money in three limited partnerships: Petro-Lewis Oil Income Program XII ($25,000); University High Equity Real Estate ($10,000); and McNeil Real Estate Fund ($10,000). Calhoun contends that he not only invested his son's funds, *Page 397 
but that he also invested some of his own capital and that, prior to investing either his own money or that of his son, he told Fowler that the principal sums invested had to be protected. He personally invested as follows: Petro-Lewis, $20,000; University High Equity Real Estate, $5,000; McNeil Real Estate, $5,000. He also contends that Fowler, at all times, knew that he (Calhoun) was acting in a guardianship capacity regarding the investments made for his son, and, according to Calhoun, Fowler assured him that the investments were safe and that they would make him a great deal of money.
The investments in the partnerships were later sold at substantial losses to both Calhoun and his son. Calhoun's ex-wife filed for an accounting in 1984, and it was determined from that accounting that substantial losses had been sustained by the guardianship estate. Upon determining that Calhoun had breached his fiduciary duty as a guardian, Calhoun was ordered by the court to repay the guardianship estate approximately $75,000. Calhoun then filed this suit against J.C. Bradford for reimbursement of the money he had had to repay to his son's account, as well as for reimbursement for his own personal losses, claiming that he had been induced by Fowler to make unwise investments.
J.C. Bradford contends that any losses pertaining to the Petro-Lewis investment have been settled in another lawsuit and, therefore, cannot be relitigated. J.C. Bradford argues that a class action filed in a federal court in Atlanta, Georgia, prohibits Calhoun from relitigating the propriety of the Petro-Lewis investments, under the principle of res judicata. In the order issued in the class action, Judge Vining held as follows:
 "The named plaintiffs, all Class Members who have not requested exclusion from the Classes, the Broker-Dealer Defendants and the Petro-Lewis Defendants are hereby severally and permanently barred and enjoined from asserting any of the Released Claims in any court or forum whatsoever."
It is undisputed that neither Calhoun nor the guardianship estate requested exclusion from the class action. Calhoun contends that J.C. Bradford withheld knowledge of the class action from him and, therefore, that it should not now be allowed to use res judicata as a defense; however, in his brief, Calhoun admits that in 1989, J.C. Bradford answered interrogatories propounded by Calhoun regarding other lawsuits filed against it. The suit, which was later classified as a class action, was listed in that answer as follows: "Kirkpatrick, et al. v. J.C. Bradford Co., U.S. District Court for the Northern District of Georgia, Pending."
With regard to the notice issue, Judge Vining, of the United States District Court, stated:
 "On or before April 10, 1990: (a) the Notice of Pendency of Class Actions, Proposed Settlement and Hearing Thereon and Right to Share in Settlement Proceeds (the 'Notice') was mailed by first class mail to all persons appearing on the records of Petro-Lewis Corporation as having purchased limited partnership interests in Petro-Lewis Oil Income Program or Oil and Natural Gas Income Program Limited Partnerships 1981-1 through 1983-12 or the Petro-Lewis Deferred Income Program Limited Partnership 1981-1, on or before February 6, 1984, through the Broker-Dealer Defendants;; and (b) the Summary Publication Notice was published once in the national edition of The Wall Street Journal and once in USA Today. Such notice is hereby determined to be in full compliance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and of due process and is found to be the best notice practicable under the circumstances.
 "Due and adequate notice of these proceedings having been given to members of the Classes, and a full opportunity having been offered to members of the Classes to object to the proposed settlement and to participate in the hearing thereon, it is hereby determined that all members of the Classes, other than those persons or entities who have elected to *Page 398 
exclude themselves from this settlement in accordance with the procedures set forth in the Notice, shall be bound by this Order and the judgments to be entered in each of the Actions.
". . . .
 "All of the claims deemed released by the named plaintiffs, Class Members, Broker-Dealer Defendants and Petro-Lewis Defendants, in accordance with the provisions of paragraphs 6 through 8, inclusive, of this Order, shall be known as the 'Released Claims.' The named plaintiffs, all Class Members who have not requested exclusion from the Classes, the Broker-Dealer Defendants and the Petro-Lewis Defendants are hereby severally and permanently barred and enjoined from asserting any of the Released Claims in any court or forum whatsoever."
The judge stated that adequate notice of the class action had been sent to each of the class members. Failure to receive notice of a class action does not exempt a class member from abiding by limitations set forth in a settlement thereof. SeeHallman v. Pennsylvania Life Insurance Co.,536 F. Supp. 745 (N.D.Ala. 1982). The fact that Calhoun did not receive actual notice of the class action would not exempt him from abiding by the settlement agreement. We hold, therefore, that the portion of Calhoun's claim pertaining to the investment in the Petro-Lewis partnership was precluded on the basis of res judicata and should not have been submitted to the jury.
J.C. Bradford also argues that Calhoun should not be allowed to indemnify himself against losses he was required to repay his son's guardianship estate, because, J.C. Bradford argues, Calhoun was a joint tort-feasor.
 "The general rule in Alabama, subject to exceptions, is that joint tort-feasors are not entitled to indemnity or contribution. Parker v. Mauldin, 353 So.2d 1375 (Ala. 1977)."
Crigler v. Salac, 438 So.2d 1375, 1385 (Ala. 1983). We do recognize some exceptions to that rule:
 "Some exceptions to the rule that indemnity will not be allowed among joint wrongdoers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the proximate or primary cause of the injury. Mallory S.S. Co. v. Druhan, 17 Ala. App. 365, 84 So. 874 (1920). See 42 C.J.S. Indemnity § 27 (1944)."
Crigler, supra, at 1385. Bradford contends that Calhoun's duties as guardian were nondelegable and, therefore, that he cannot now pass to his broker the neglect of his responsibilities.
 "While a guardian may not delegate his authority and duties to others, he must frequently act through agents or attorneys. This is not a delegation of his powers, for the guardian remains responsible for the reasonable diligence of his agent or attorney. He must select his agents or attorney with reasonable care, and he must supervise their acts with the same degree of care. Donaldson v. Allen, 182 Mo. 626, 650, 81 S.W. 1151; McClure v. Middletown Trust Co., 95 Conn. 148, 110 A. 838. Whether in a given case the guardian will be justified in intrusting a specific part of the administration of the trust to an agent must depend upon whether such act would be the act of a reasonably prudent person in a similar situation."
Cox v. Williams, 241 Ala. 427, 3 So.2d 129, 133
(1941). Section 19-3-120 et seq., Code of Alabama (1975), set out the investments into which a guardian may invest the proceeds of a guardianship estate. We do not deem the failure of a guardian to apprise himself of his legal responsibilities with regard to investing a guardianship estate to be within the realm of "technical fault" or "constructive fault." In addition, Calhoun evidently never consulted anyone with regard to his specific duties with regard to his son's money. He commingled his own money with guardianship funds and he failed to provide the court with a timely accounting, both of which are violations of his duties as a guardian. *Page 399 
For the foregoing reasons, the judgment is reversed as it relates to the investments made on behalf of the guardianship estate and also as it relates to Calhoun's personal claims pertaining to the Petro-Lewis partnership investment. In other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and INGRAM, JJ., concur.